TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00190-CR







Beauhamma Broadnax, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 97-252-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING








 Beauhamma Broadnax, appellant, was convicted by a jury of two counts of
intoxication manslaughter, and the jury assessed punishment of sixteen years for each offense. 
See Tex. Penal Code Ann. § 49.08 (West 1994). The trial court ordered the sentences to run
consecutively. Appellant's single point of error contends that the trial court erred by denying a
request for an instruction for the jury to disregard blood sample evidence if they believed it was
obtained illegally, or had a reasonable doubt as to its legality. We will affirm the judgment.


Facts


 Appellant drove a car with three passengers at high speed late at night on a state
highway near Coupland in Williamson County on December 7, 1996. While passing a truck,
appellant lost control, skidded, hit a ditch and caused the car to roll on its side three or four times,
then end over end six or seven times, throwing out the three passengers. The State's expert
estimated appellant's speed at 95-100 miles per hour, while appellant's expert estimated it at about
75 mph. Darrel Seigmund, who had been sitting in the front passenger seat, died about four hours
after the wreck. Krishonda Jackson, who rode in the back-passenger-side seat, died four days
later. The surviving passenger, Jaqui Ware, said that appellant and Seigmund had been drinking
alcohol and smoking marihuana in the car. Seigmund had offered the marihuana cigarette to
Jackson and told her that it had embalming fluid on it. 

 Department of Public Safety Trooper Mario Orozco was the primary investigating 
officer on the scene and Ware told him that appellant was the driver. Appellant was not injured. 
Orozco smelled alcohol on appellant's breath. He formed the opinion that appellant was
intoxicated and decided that he would not be released. His observation of the injured passengers
and the reports on their condition from the emergency medical service personnel led him to believe
they would not survive. Orozco testified: "I told him that because somebody is seriously hurt in
this accident and somebody's going to die, a mandatory blood specimen was going to be taken." 
Orozco put appellant in custody at the scene and directed a deputy sheriff to take appellant to the
hospital to draw a blood sample. Another trooper, John Ramsey, met the deputy at the hospital
and supervised the taking of the blood sample. Trooper Ramsey testified, "I read to Mr. Broadnax
what's called a Mandatory Blood Sample Affidavit. I told him what I was going to do. Mr.
Broadnax said that he wouldn't mind giving us blood at all, that he understood, and then . . . the
ER technician drew the blood . . . ." Appellant signed a statement on a form provided by the
hospital that he consented to the drawing of his blood. This followed Trooper Ramsey's written
request on the form that appropriate hospital personnel take a blood specimen from appellant. 
Finally, the technician who drew the blood signed the form to state that, at the request of peace
officer John Ramsey, he withdrew a blood sample from appellant. Appellant was cooperative with
the officers and the hospital personnel. Appellant was returned to the scene of the incident, where
Trooper Orozco was still investigating. Orozco formally advised appellant that he was arrested
for driving while intoxicated. (1) Orozco took appellant to the Williamson County Jail. He read him
the statutory warning on the breath test, appellant consented to the test, and Orozco administered
the test to him. Appellant did not testify and does not refer us to any other evidence in the record
that conflicts with the police officers' and hospital personnel's testimony describing the events
surrounding the taking of the blood specimen. 


Instruction on Admissibility of the Blood Specimen and Test

 Appellant contends that the trial court erred by refusing to give the jury an
instruction based on a statute that provides for the exclusion of illegally obtained evidence from
the jury. (2) The statute reads in pertinent part as follows:


 (a) No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the Constitution
or laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case.


 In any case where the legal evidence raises an issue hereunder, the jury
shall be instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such event,
the jury shall disregard any such evidence so obtained.



Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 1999) (emphasis added).

 A trial court is required to include a properly worded Article 38.23 instruction in
the jury charge only if there is a factual dispute whether the evidence was obtained in violation of
the federal or state constitutions. Bell v. State, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996), cert.
denied, 118 S. Ct. 90 (1998); Thomas v. State, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986); 
Murphy v. State, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982); Angelo v. State, 977 S.W.2d
169, 177-78 (Tex. App.--Austin 1998, pet. ref'd). In Angelo, we pointed out that although
appellant claimed there were factual issues, he did not contend there was any dispute as to how
the challenged evidence was obtained, and the issues he raised were legal questions as to whether
the evidence obtained from the warrantless search and seizure was admissible. We found the
instruction was not required because there were no factual disputes as to the manner in which the
complained-of evidence was obtained.

 Appellant insists that there was a factual dispute about whether the blood sample
was taken voluntarily or whether he was given statutory warnings before the blood specimen was
taken. The State argues that there is complete agreement on what occurred and how the blood
specimen was taken, but a legal dispute over the application of the law to the undisputed facts. 
At a hearing outside the presence of the jury, the parties argued their respective positions on the
need for the instruction and the trial court determined that there was no factual dispute in regard
to the admissibility of the blood. The trial court refused appellant's request for this instruction. 

 The statute relating to obtaining blood samples is now in Chapter 724 of the
Transportation Code, entitled "Implied Consent." In relevant part, it provides:


(a) One or more specimens of a person's breath or blood may be taken if the
person is arrested and at the request of a peace officer having reasonable grounds
to believe the person:


 (1) while intoxicated was operating a motor vehicle in a public place . . . .


(b) A peace officer shall require the taking of a specimen of the person's breath
or blood if:


 (1) the officer arrests the person for an offense under Chapter 49 [Intoxication
and Alcoholic Beverage Offenses], Penal Code, involving the operation of a motor
vehicle . . . 


 (2) the person was the operator of a motor vehicle . . . involved in an
accident that the officer reasonably believes occurred as a result of the offense;


 (3) at the time of the arrest the officer reasonably believes that a person has
died or will die as a direct result of the accident; and


 (4) the person refuses the officer's request to submit to the taking of a
specimen voluntarily.


(c) The peace officer shall designate the type of specimen to be taken.



Tex. Transp. Code Ann. § 724.012 (West 1999) (emphasis added).

 The section following 724.012 provides that a specimen may not be taken if a
person refuses to submit, "[e]xcept as provided by Section 724.012(b)." Transp. Code § 724.13. 
Section 724.14 authorizes the taking of a specimen from a person who is dead, unconscious, or
otherwise incapable of refusal. These provisions read together make it clear that in certain
circumstances a peace officer may compel the extraction of a blood specimen without consent from
a driver whom he arrests for being intoxicated. (3)

 We have held that a trial court did not err in admitting blood test results taken under
Section 724.012 where the driver did not consent. In Porter v. State, 969 S.W.2d 60, 65 (Tex.
App.--Austin 1998, pet. ref'd), we said:

Blood draws are mandatory from persons who are under arrest for any offense
arising out of acts committed while operating a motor vehicle in a public place and
whose intoxicated driving has led to the death or is expected to result in death to
an individual, and such results are admissible into evidence in a subsequent trial for
that offense. 



 We have previously considered the provisions for taking an involuntary blood
specimen under the predecessor of the implied consent statute. The case is similar to the instant
one. In Mitchell v. State, 821 S.W.2d 420 (Tex. App.--Austin 1991, pet. ref'd), we determined
that a blood sample was lawfully obtained under this statute. The case involved a serious
automobile wreck wherein the defendant lost control of the car, which then left the road, became
airborne, and flipped over several times. The defendant's three-year-old son suffered massive
injuries, and another passenger sustained numerous broken bones. The investigating officer
observed the defendant still behind the wheel in his seat belt, and detected a strong odor of alcohol
about him. Based upon his observations of the child's condition and information from the medical
attendants the officer concluded that the child was in critical condition and near death. He radioed
this information to Austin and asked that a blood sample be taken from the driver upon his arrival
at the hospital. A fellow officer in Austin went to the hospital and obtained the blood sample. 
The officer approached the defendant, who was lying on a stretcher, and asked if he was the
driver. Appellant turned his eyes away and closed them. The officer read to him a document
indicating that the officer was there to obtain a blood specimen and that defendant was under arrest
for an offense involving driving while intoxicated. The defendant did not respond. The officer
took this as a refusal and concluded that the driver would not voluntarily agree to give the blood
sample. Based on the information the officer at the hospital had received from the investigating
officer at the scene, we held that the second officer had probable cause to arrest defendant for
driving while intoxicated, could reasonably believe that an accident had occurred as a result of this
offense, and could reasonably believe that a person injured in the accident was likely to die. We
also held that from defendant's conduct at the hospital, the officer correctly understood that
appellant did not voluntarily consent to giving a blood sample. Id. at 424-25. We further noted
that


[s]trictly speaking, § 3(i)(4) [now § 724.012(b)(4)] adds nothing to the statute. If
a person voluntarily consents to an officer's request for a blood or breath sample,
the officer need not resort to his authority under § 3(i) [§ 724.012(b)]. On the
other hand, if the conditions specified in § 3(i) [§ 724.012(b)] (1), (2), and (3) are
satisfied, the absence of consent is irrelevant. In this cause, the State relied on
§ 3(i) [§ 724.012(b)] because appellant objected that the blood sample had been
taken involuntarily. 



Mitchell, 821 S.W.2d at 425 n.4.

 Likewise, the record here shows that the predicate for taking an involuntary blood
specimen was proven. Appellant's consent became irrelevant. The investigating officer, Orozco,
(1) had probable cause to arrest appellant for driving while intoxicated and had decided at the
scene that he would not be released; (2) reasonably believed that the accident had occurred as a
result of the DWI offense; and (3) reasonably believed that a person injured in the accident was
likely to die. Orozco so advised appellant and sent him to the hospital in the custody of another
officer to obtain a mandatory blood specimen. Appellant appeared to understand what he was told
by Orozco and Ramsey. Appellant did not object and cooperated with the law enforcement
officers and the hospital personnel in that process. He gave his written consent to the extraction
of the blood. All of the evidence shows that appellant voluntarily consented after receiving an
accurate statement that the officers had a factual basis and legal authority to obtain a blood
specimen without his consent and intended to do so; we believe that appellant's consent is effective
without any other warning. The warning under Section 724.015 is not applicable, because it is
based upon the subject's right to refuse to consent. Under Sections 724.012(b) and 724.013 and
the undisputed facts of this case, appellant had no right to refuse to consent. He had the right to
consent and to avoid the forcible extraction of his blood, and the record shows that that is what
happened. Appellant has not demonstrated that there was any relevant fact in dispute which the
jury could decide under Article 38.23. The trial court did not err in refusing the instruction. 
Appellant's point of error is overruled. 

 Having disposed of appellant's only point of error, we affirm the judgment of
conviction.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: June 30, 1999

Publish
1. The injured people had been taken to hospitals and Trooper Orozco was not certain whether
either had died, so he did not charge appellant with intoxication manslaughter at that time.
2. Appellant requested the following charge:


If you do not find beyond a reasonable doubt that the blood sample taken from
Mr. Broadnax was either voluntary or was taken after the statutory warnings
were given, and after a request and refusal, you're to ignore--or you should not
consider the blood sample for any purpose.
3. The constitutionality of compelling production of physical evidence of intoxication is well-settled. See Schmerber v. California, 384 U.S. 757 (1966) (compelling non-testimonial evidence
does not contravene Fifth Amendment); Thomas v. State, 723 S.W.2d 696, 704-05 (Tex. Crim.
App. 1986) (State could either compel physical evidence of intoxication or permit evidence of
refusal without violating state constitutional protection against self-incrimination); Rodriguez v.
State, 631 S.W.2d 515, 517 (Tex. Crim. App. 1982) (there is no state constitutional barrier to
subjecting an accused, without his consent, to a chemical test for intoxication, if taken under
conditions that comport with due process); Olson v. State, 484 S.W.2d 756, 772 (Tex. Crim. App.
1969) (compelling a blood test does not require an accused to give evidence against himself within
the meaning of article I, section 10 of the Texas Constitution). A search and seizure of a blood
sample is protected by the Fourth Amendment, but it is only those searches and seizures which
are not justified in the circumstances or which are made in an improper manner that are
prohibited. Where the officers have probable cause, exigent circumstances, and a reasonable
method of extraction, the search and seizure is not unreasonable and does not violate the Fourth
Amendment. Schmerber, 384 U.S. at 767-768. The court of criminal appeals has held that the
taking of a blood sample is a search and seizure within the meaning of article I, section 9 of the
Texas Constitution, and that the State was required to comply with the applicable statutory
protections for searches and seizures. Escamilla v. State, 556 S.W.2d 796, 798 (Tex. Crim. App.
1977). The court of criminal appeals has followed Schmerber by requiring probable cause, exigent
circumstances, and a reasonable method of extraction to be shown before a warrantless search and
seizure of a blood sample will be held to be reasonable. State v. Comeaux, 818 S.W.2d 46, 53
(Tex. Crim. App. 1991). 



t him to the hospital in the custody of another
officer to obtain a mandatory blood specimen. Appellant appeared to understand what he was told
by Orozco and Ramsey. Appellant did not object and cooperated with the law enforcement
officers and the hospital personnel in that process. He gave his written consent to the extraction
of the blood. All of the evidence shows that appellant voluntarily consented after receiving an
accurate statement that the officers had a factual basis and legal authority to obtain a blood
specimen without his consent and intended to do so; we believe that appellant's consent is effective
without any other warning. The warning under Section 724.015 is not applicable, because it is
based upon the subject's right to refuse to consent. Under Sections 724.012(b) and 724.013 and
the undisputed facts of this case, appellant had no right to refuse to consent. He had the right to
consent and to avoid the forcible extraction of his blood, and the record shows that that is what
happened. Appellant has not demonstrated that there was any relevant fact in dispute which the
jury could decide under Article 38.23. The trial court did not err in refusing the instruction. 
Appellant's point of error is overruled. 

 Having disposed of appellant's only point of error, we affirm the judgment of
conviction.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: June 30, 1999

Publish
1. The injured people had been taken to hospitals and Trooper Orozco was not certain whether
either had died, so he did not charge appellant with intoxication manslaughter at that time.
2. Appellant requested the following charge:


If you do not find beyond a reasonable doubt that the blood sample taken from
Mr. Broadnax was either voluntary or was taken after the statutory warnings
were given, and after a request and refusal, you're to ignore--or you should not
consider the blood sample for any purpose.
3. The constitutionality of compelling production of physical evidence of intoxication is well-settled. See Schmerber v. California, 384 U.S. 757 (1966) (compelling non-test