Opinion issued March 5, 2009
















     

In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00993-CR




APRIL LEANN CLARK, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 54793




MEMORANDUM OPINION
          A jury convicted appellant, April Leann Clark, of manslaughter and assessed
her punishment at 13 years in prison. See Tex. Penal Code Ann. § 19.04 (Vernon
2003). We determine (1) whether the trial court erred by admitting her oral statement
made to a state trooper and (2) whether the trial court erred in failing to suppress the
results of her blood test. We affirm.
Facts
          On July 11, 2005, appellant rear-ended the complainant, Herbert Owen Cain,
forcing his car into oncoming traffic. The complainant was declared dead at the scene
of the crash. Trooper T. Dyson was dispatched to investigate the accident and arrived
just minutes after the paramedics. Trooper Dyson discovered appellant in the driver’s
seat of a white passenger vehicle that matched the description of a vehicle that had
already been reported for reckless driving. Appellant was accompanied by four
passengers, including her two small children. Appellant told Trooper Dyson that she
had taken some prescription medications including Lansaprin and Depakote. Trooper
Dyson observed that appellant appeared confused and that her speech and movements
were slow.
          Trooper Dyson conducted an investigation of the vehicles involved and spoke
with the witnesses to the crash. He determined that appellant failed to maintain a
proper lookout and failed to maintain a safe speed. He also determined that appellant
was possibly under the influence of prescription medication and decided that he
needed to collect a sample of her blood. The paramedics took appellant to the local
hospital, and Trooper S. Stanfield, the backup officer at the crash site, followed her
to obtain the blood sample. Trooper Stanfield testified that appellant consented to
have her blood drawn. The emergency room nurse, Donna Harkreader, drew
appellant’s blood pursuant to that consent. Trooper Stanfield took the blood sample
to be processed and left appellant in the care of the hospital.
          The subsequent results of appellant’s blood test indicated that she had taken
Xanax, Depakote, Soma, and Valium, which are all central nervous system
depressants. Appellant did not have a valid prescription for two of the four
medications at the time of the crash. Each of these medications could cause
drowsiness, dizziness, and lack of coordination, taking them together increases those
effects. At the conclusion of Trooper Dyson’s investigation some weeks after the
crash, appellant was arrested under a warrant.
          Both Trooper Dyson’s testimony regarding appellant’s statements and the
results of appellant’s blood test were admitted at trial over appellant’s objection.
Statements made to Officer at the Scene
          In her first issue, appellant asserts that the trial court erred by allowing Trooper
Dyson to testify regarding her statements at the crash site because they were
inadmissible under article 38.22 of the Texas Code of Criminal Procedure, which
provides that “[n]o oral . . . statement of an accused made as a result of custodial
interrogation shall be admissible against the accused in a criminal proceeding” unless
certain conditions are met, including the requirement that a recording be made of the
statement and that the defense attorney is provided with a copy. Tex. Code Crim.
Proc. Ann. art. 38.22, § 3 (Vernon 2005). The State contends that appellant failed
to preserve this complaint for appeal because appellant only objected on the grounds
of the United States and Texas Constitutions at trial. The State also contends that
appellant’s statements were admissible because they were not the result of a custodial
interrogation.
A.      Factual setting
          At trial, Trooper Dyson testified that when he arrived at the scene of the crash,
he observed the three vehicles involved and noted that they all had severe damage. 
The first vehicle he investigated was the Jeep the complainant had been driving. The
complainant’s body was still in the Jeep and paramedics had already declared him
dead. Trooper Dyson then approached appellant’s vehicle. He spoke with the driver
and the passenger, asking whether anyone was injured and needed to see a paramedic. 
Trooper Dyson identified appellant as the driver of this second vehicle and then
testified, “I asked her what had happened and she state to me—” when appellant
interrupted by stating, “Your Honor, may we approach briefly on this?”
          Outside the hearing of the jury, appellant stated, “We had a motion in limine. 
The State agreed to approach before eliciting any statements that [appellant] allegedly
made. We were getting to that point. And I wanted to call time out so we could
address those statements.” The trial court allowed appellant to conduct a brief voir
dire of Trooper Dyson out of the jury’s presence. Trooper Dyson testified that he
made an initial determination when he first arrived at the scene that appellant’s car
was a possible contributing cause to the crash, but that he did not consider her a
“suspect” and did not give her any legal warnings. He also testified that she was not
free to leave.
          Appellant objected to the admission of her statements in response to Trooper
Dyson asking her what had happened, stating, “[I]f she is not free to leave, if she is
a suspect, as a contributing, a possible contributing factor in the case, . . . any
questioning at all is custodial and interrogation and requires Miranda warnings. 
That’s my objection.” Then the following exchange took place:[appellant]:            And actually from now on my basis would be Fourth
Amendment United States Constitution and the
article 1, section 9 of the Texas Constitution.
 
[trial court]:           Okay.
 
[the State]:             Your Honor, this is simply investigative detention. 
He’s not formed probable cause to arrest her yet. 
She is not in custody. She is just being detained for
investigation purposes.
 
[trial court]:           All right. Your objection is overruled. As to
anything in the future, I am not going to really make
a ruling on that because I will take those as they
come.
 
          Trooper Dyson then gave the following testimony regarding his contact with
appellant at the scene of the crash:
When I first made contact with her, I asked her if she was okay, and
asked the other occupants in the vehicle if they were okay. I asked them
if EMS had already seen them, and then I asked what had happened,
what was the cause or in her terms what had happened. And she stated
she didn’t know. That she had looked down, looked up and the vehicle
was there. She tried to veer to the right, and she hit him.
 
B.      Preservation
          To preserve a complaint for appellate review, a defendant must make a timely,
specific objection to the trial court. Tex. R. App. P. 33.1(a); Wilson v. State, 71
S.W.3d 346, 349 (Tex. Crim. App. 2002). An objection stating one legal basis may
not be used to support a different legal theory on appeal. Heidelberg v. State, 144
S.W.3d 535, 537 (Tex. Crim. App. 2004). When a complaint on appeal does not
comport with the objection made at trial, the error is not preserved. Wilson, 71
S.W.3d at 349; Flores v. State, 125 S.W.3d 744, 747 (Tex. App.—Houston [1st Dist.]
2003, no pet.). An objection is sufficient to preserve error for appellate review if the
objection communicates to the trial judge what the objecting party wants and why the
objecting party thinks himself entitled to relief. Lankston v. State, 827 S.W.2d 907,
909 (Tex. Crim. App. 1992).
          At trial, appellant objected to the admission of her statements through Trooper
Dyson’s testimony. Appellant’s trial counsel clearly stated that the bases for the
objection were Miranda’s


 warning requirement for suspects undergoing custodial
interrogation, the “Fourth Amendment [of the] United States Constitution” and
“article 1, section 9 of the Texas Constitution.” On appeal, appellant argues that
admission of the statements should not have been allowed under Texas Code of
Criminal Procedure article 38.22 because it was the product of a custodial
interrogation and her statements were not recorded and the State had not shown at
trial that any of the exceptions for using a non-recorded oral statement existed. 
Nothing in appellant’s objection at trial would have put the trial court on notice to her
complaint on appeal that the statements were not recorded. However, appellant’s
objection at trial did put the trial court on notice to her complaints on appeal that her
statements were made as a result of an improper custodial interrogation in violation
of her constitutional rights. Therefore, we hold that appellant preserved her
complaint to the extent that it comports with her objection at trial that her statements
were inadmissible because they were the result of an improper custodial interrogation. 
See Heidelberg, 144 S.W.3d at 537; Wilson, 71 S.W.3d at 349; Flores, 125 S.W.3d
at 747.
C.      Admissibility of appellant’s statements
          We review a trial court’s ruling on the admissibility of evidence for abuse of
discretion. Cameron v. State, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). Because
trial courts are in the best position to decide questions of admissibility, we uphold a
trial court’s admissibility decision when that decision is within the zone of reasonable
disagreement. Id.
          “A person is in custody only if, under the circumstances, a reasonable person
would believe that his freedom of movement was restrained to the degree associated
with a formal arrest.” Dowthitt v. State, 931 S.W.2d 244, 254 (Tex. Crim. App.
1996). Detention and questioning by a police officer during a DWI investigation,
without more, is not custody. See State v. Stevenson, 958 S.W.2d 824, 828–29 (Tex.
Crim. App. 1997). However, police conduct during an encounter may cause a
noncustodial interrogation to escalate into custodial interrogation. Dowthitt, 931
S.W.2d at 255. In determining whether a noncustodial encounter has so escalated,
a court may look to four factors: (1) probable cause to arrest; (2) the police officer’s
subjective intent; (3) the focus of the investigation; and (4) the defendant’s subjective
belief. Id. at 254; Shpikula v. State, 68 S.W.3d 212, 218 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d). However, those factors are relevant only to the extent that
they are manifested to the defendant through the words and actions of law
enforcement officials. Shpikula, 68 S.W.3d at 218 (citing Dowthitt, 931 S.W.2d at
254–55).
          At the time appellant made the statements in question, appellant was sitting in
the front seat of her vehicle. Trooper Dyson had arrived at the scene of the crash just
a few minutes before and asked her what had happened and if anyone needed to see
a paramedic. When Trooper Dyson approached appellant’s vehicle, appellant was not
a suspect, and she was not under arrest. The act of approaching her car and asking
a general, investigative question did not manifest to appellant any intention on
Trooper Dyson’s part to escalate their encounter into a formal arrest. See Shpikula,
68 S.W.3d at 218; see also Jones v. State, 795 S.W.2d 171, 174 & n.3 (Tex. Crim.
App. 1990) (stating that “broad general questions such as ‘what happened’ upon
arrival at the scene of a crime” are not considered “interrogation”). Therefore,
appellant’s statements to Trooper Dyson were not the result of a custodial
interrogation. See Dowthitt, 931 S.W.2d at 254–55. The trial court’s decision on the
admissibility of appellant’s statements were within the zone of reasonable
disagreement; therefore, the trial court did not abuse its discretion in admitting the
statement. See Cameron, 241 S.W.3d at 19.
We overrule appellant’s first issue.
Suppression of Blood Test ResultsIn her second issue, appellant argues that the trial court abused its discretion
in failing to suppress the results of her blood test because she did not voluntarily
consent to the blood draw. The State argues that appellant failed to preserve this
complaint for appellate review because she filed a motion in limine, rather than a
motion to suppress and because she failed to object when the evidence was presented
at trial. The State also argues that appellant did give voluntary consent to have her
blood drawn.
A.      Factual setting
          Appellant brought a motion in limine which requested, in part, that the State
refrain from mentioning or referring to the following matters until they were ruled
admissible by the trial court:
1.       The blood sample taken from Clark was a warrantless search and
seizure and was therefore illegally obtained in violation of the
Fourth Amendment of the United States Constitution and Article
I, Section 9 of the Texas Constitution.
 
2.       Prior to specific mention of any blood sample or test results from
that blood sample, a hearing should be immediately held outside
the presence of the jury for determination whether . . . the blood
sample and any test results from that sample are admissible.

The trial court decided instead to hold a hearing before the trial started, outside the
presence of the jury, to determine whether the results of the blood test were
admissible.



          Based on the statements of various witnesses at the crash site, including
appellant’s statements that she had taken some prescription medications, Trooper
Dyson concluded that appellant had operated a motor vehicle while under the
influence of prescription medication. Paramedics transported appellant by ambulance
from the scene of the crash to a local hospital. Trooper Dyson directed Trooper
Stanfield to follow appellant to the hospital and obtain a blood sample.
          Trooper Stanfield testified that appellant showed signs of intoxication—that
she was drowsy and lethargic. Trooper Stanfield also testified that appellant
consented to having her blood drawn and that he did not threaten or coerce her in any
way. Appellant signed a consent form which stated, “I, April Leann Clark, having
been placed under arrest on a charge of driving a motor vehicle on a public highway
while intoxicated, do voluntarily give a specimen of my blood to [Trooper
Stanfield].” Trooper Stanfield also filled out a statutory authorization for a
Mandatory Blood Specimen pursuant to section 724.012(b) of the Texas
Transportation Code.


 He testified that he was in the room when Harkreader drew
appellant’s blood, and both Trooper Stanfield and Harkreader testified that appellant
never struggled or resisted or told them she was unwilling to have her blood drawn.
          At the pre-trial hearing, appellant testified that she began suffering from an
anxiety attack while she was in the ambulance on the way to the hospital and that the
paramedics gave her a pill to help her relax. Harkreader testified that paramedics
could not give anti-anxiety medication without a doctor’s order and that there was no
doctor in the ambulance to give such an order.
          Appellant further testified that when she arrived at the hospital, she did sign the
consent form offered to her by Trooper Stanfield. Appellant’s husband was present
with her at the hospital. The following exchange took place between appellant and
her trial counsel:
[trial counsel]:       Did you think you had any choice about whether to
give that sample of your blood?
 
[appellant]:            No, sir.
 
[trial counsel]:       Did you think—did somebody ask you to consent in
terms of [appellant], will you give us your blood? 
You have a choice not to but we want you to?
 
[appellant]:            No, sir.
 
[trial counsel]:       What did [Trooper Stanfield] tell you?
 
[appellant]:            He basically told me to sign there, and if I did not
sign I would be detained and I could not go home to
my kids.
 
. . . . 
 
[trial counsel]:       Did [Trooper Stanfield], in fact, tell you that[—]and
I think you just said this[—]that if you did not sign
the form and give your blood you would be arrested?
 
[appellant]:            Yes, sir.
 
Appellant testified that she was never read her Miranda warnings


 and that at the time
she gave her consent she was very anxious and worried about what had happened to
her children following the accident.
          The trial court denied appellant’s motion in limine as it related to appellant’s
complaints about the admissibility of the blood test results. The trial court also
stated, “Now as far as its admissibility, the state is going to have to lay the predicate. 
Do whatever it feels it needs to do as far as laying the predicate and chain of
custody.” The following exchange then took place:
[appellant]:            [S]ince this is a de facto suppression hearing, is the
Court finding that she was under arrest and,
therefore, the sample was taken under the code or
whether—?
 
[trial court]:           I am finding it was consensual.
 
[appellant]             I just ask to keep the record clear. I think the Court
has to enter some kind of finding.
 
[trial court]:           Well, there was really no motion to suppress filed. 
I know that’s why you are calling [it] de facto, but it
was in the form of a motion in limine; but I will
make a finding—I will make a finding it was done,
that the consent was consensual, that is was done
positive unequivocally without the product of duress
or coercion. And so I find it to be consensual.
B.      Preservation
          The State argues that appellant failed to preserve this complaint for appeal
because her motion in limine was not enough to preserve the issue for appellate
review, and she did not object during trial when the evidence was presented to the
jury. However, when a trial court hears and overrules objections to evidence outside
the hearing of the jury, those objections need not be made again in front of the jury
when the evidence actually is presented to the jury. Ethington v. State, 819 S.W.2d
854, 858 (Tex. Crim. App. 1991). The trial court conducted a hearing on the issue
of the voluntariness of appellant’s consent outside the presence of the jury, and the
trial court ruled that appellant’s consent was voluntary.


 Therefore, we hold that
appellant did preserve this complaint for appellate review. See id.
C.      Voluntariness of appellant’s consent
          We review a trial court’s ruling on a motion to suppress evidence for an abuse
of discretion. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). The
trial court is the sole trier of fact and judge of witness credibility and may believe or
disbelieve all or any part of a witness’s testimony. State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000). In reviewing the record, we defer to the trial court’s
determination of facts, particularly when the trial court’s findings turn on an
evaluation of the credibility and demeanor of the witnesses. Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997).
          When a trial court makes explicit fact findings, we must view the evidence in
the light most favorable to the trial court’s ruling and determine whether the evidence
supports the trial court’s findings. State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim.
App. 2006). We must then review the trial court’s legal ruling de novo unless the trial
court’s explicit fact findings are also dispositive of the legal ruling. Id. We uphold
a trial court’s ruling on a suppression motion if it is reasonably supported by the
record and is correct on any theory of law applicable to the case. Villarreal, 935
S.W.2d at 138.
          Generally speaking, taking a blood sample is a search and seizure within the
scope of the Fourth Amendment to the United States Constitution and article I,
section 9 of the Texas Constitution. See Schmerber v. California, 384 U.S. 757, 767,
86 S. Ct. 1826, 1834 (1966); Aliff v. State, 627 S.W.2d 166, 169 (Tex. Crim. App.
1982); Muniz v. State, 264 S.W.3d 392, 395 (Tex. App.—Houston [1st Dist.] 2008,
no pet.). However, only those searches and seizures which are not justified in the
circumstances or which are made in an improper manner are prohibited. See
Schmerber, 384 U.S. at 768, 86 S. Ct. at 1834. When officers have probable cause,
exigent circumstances, and a reasonable method of extraction, a warrantless seizure
of a blood sample can be held to be reasonable. Id. at 767–68, 86 S. Ct. at 1834; see
Aliff, 627 S.W.2d at 169–70.
          Consent to search is an established exception to the constitutional requirements
of both a warrant and probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219,
93 S. Ct. 2041, 2043–44 (1973); Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim.
App. 2000). The Texas Constitution requires the State to show by clear and
convincing evidence that the consent was freely given. Carmouche, 10 S.W.3d at
331. To be valid, consent to search must be positive and unequivocal and may not
be coerced. Id. (citing Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App.
1991)).
          The Texas Transportation Code also provides an exception to the general rule
that peace officers must either have consent or a search warrant to obtain a blood
sample. Section 724.012(b) provides:
(b) a peace officer shall require the taking of a specimen of the person’s
breath or blood if:
 
(1) the officer arrests the person for an [intoxication or alcoholic
beverage offense] involving the operation of a motor vehicle. . . ;
 
(2) the person was the operator of a motor vehicle . . . involved in an
accident that the officer reasonably believes occurred as a result of the
offense;
 
(3) at the time of the arrest the officer reasonably believes that as a direct
result of the accident . . . any individual has died or will die . . . ; and
 
(4) the person refuses the officer’s request to submit to the taking of a
specimen voluntarily.
 
Tex. Transp. Code Ann. § 724.012(b) (Vernon Supp. 2008).
          Appellant contends that several factors weigh against the trial court’s finding
that her consent was voluntary. She argues that she was only 22 years old at the time
of the incident and was unsophisticated. She was anxious because she had just been
in a car accident and was worried about the condition of her children, which made her
feel even more pressure when Trooper Stanfield allegedly told her that if she did not
consent she would be detained and would not be able to go home to her children. 
Appellant also argues that no one ever gave her any Miranda warnings or other
constitutional advice.
          In Broadnax v. State, the Austin court of appeals addressed circumstances very
similar to those in this case. 995 S.W.2d 900, 904 (Tex. App.—Austin 1999, no pet.). 
The Broadnax court wrote:
Appellant did not object [to having his blood drawn] and cooperated
with the law enforcement officers and the hospital personnel in that
process. He gave his written consent to the extraction of the blood. All
of the evidence shows that appellant voluntarily consented after
receiving an accurate statement that the officers had a factual basis and
legal authority to obtain a blood specimen without his consent and
intended to do so; we believe that appellant’s consent is effective
without any other warning. The [statutory warning required for consent
to take a specimen under another section of the Texas Transportation
Code] is not applicable, because it is based upon the subject’s right to
refuse to consent. Under [section 724.012(b)] and the undisputed facts
of this case, appellant had no right to refuse to consent. He had the right
to consent and to avoid the forcible extraction of his blood, and the
record shows that that is what happened.
 
Id. at 904.
          Here, Miranda warnings were not required to take a specimen of appellant’s
blood. See Rhode Island v. Innis, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689 (1980)
(holding that Miranda’s safeguards only apply when suspect is placed in custody and
interrogated by police); Jones v. State, 795 S.W.2d 171, 174–75 (Tex. Crim. App.
1990) (same). Nor was appellant entitled to other constitutional or statutory warnings
beyond Trooper Stanfield’s warning that she would be required to give a blood
sample whether or not she consented. See Broadnax, 995 S.W.2d at 904. The record
establishes that the necessary predicate for taking an involuntary blood sample
existed—Trooper Stanfield had probable cause to arrest appellant for an intoxication
offense involving the operation of a motor vehicle,


 reasonably believed that the crash
occurred as a result of appellant’s offense, and reasonably believed that a person had
died as a result of the crash. See id. When viewed in this light, Trooper Stanfield’s
statement to appellant that she would have to be detained if she did not consent to the
blood draw is not coercive, but merely informative of the likely consequence of her
decision.
          Like the appellant in Broadnax, appellant signed a form giving consent to have
her blood drawn. See id. Trooper Stanfield and Harkreader both testified that
appellant consented orally, did not struggle when the blood was drawn, and never told
anyone that she did not wish to have her blood taken. Appellant herself testified that
her husband was with her during the entirety of her time in the hospital. The trial
court was the sole finder of fact and judge of these witnesses’ credibility and was free
to believe or disbelieve all or any part of appellant’s testimony regarding the
circumstances of her consent and Trooper Stanfield’s and Harkreader’s statements
regarding the events at the hospital. See Ross, 32 S.W.3d at 855.
          The record supports the trial court’s finding that appellant voluntarily
consented to having her blood drawn. See Broadnax, 995 S.W.2d at 904. Therefore,
the trial court did not abuse its discretion. See Villarreal, 935 S.W.2d at 138 (holding
that appellate courts must uphold trial court’s ruling on suppression motion when it
is reasonably supported by record and correct on any applicable theory of law).
          We overrule appellant’s second issue.
Conclusion
          We affirm the judgment of the trial court.





                                                                        Tim Taft
                                                                        Justice
 

Panel consists of Justices Taft, Bland, and Sharp.

Do not publish. Tex. R. App. P. 47.2(b).