# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-99-00411-CR

---

**Genaro Vera Estrada, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 99-173-K277, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING**

---

A few minutes after 10:00 a.m. on January 20, 1999, appellant Genaro Vera Estrada was driving north on Interstate 35 when he was stopped by Texas Department of Public Safety Trooper Chance Collins for failing to display a front license plate. This routine traffic stop began a chain of events that culminated two hours later in the discovery of cocaine secreted in appellant's car. A jury found appellant guilty of possessing more than 400 grams of cocaine with intent to deliver and assessed punishment at imprisonment for forty years and a $250,000 fine. *See* Tex. Health & Safety Code Ann. § 481.112 (West Supp. 2000). We will affirm.

Appellant first contends the district court erred by overruling his motion to suppress evidence. In reviewing this contention, we defer to the trial court's factual determinations but review *de novo* the court's application of the law to the facts. *See Guzman v. State*, 955 S.W.2d 85, 89

(Tex. Crim. App. 1997). Because the district court did not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the record and buttress its conclusion. *See Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The entire encounter between appellant and the police was videotaped by a camera mounted in Collins's patrol vehicle. The tape was admitted in evidence and we have viewed it as part of our review of the record.

After appellant stopped, Trooper Collins walked up to his car and spoke to him through the driver's side window. The officer noticed a license plate lying on the shelf behind the rear seat and appellant confirmed that it was the plate that belonged on the front of the vehicle. Collins also noticed powdered carpet cleaner covering the back seat and rear floor of the car. An air freshener was hanging from the rear view mirror. Collins testified that he considered it unusual for a person to spread carpet cleaner throughout a car and then leave it there. He added that in his experience, carpet cleaner and air fresheners were commonly used by drug couriers to hide the odor of their contraband.

Appellant was stopped on the improved shoulder of the interstate highway only a few feet from passing traffic. Collins asked appellant to step outside and join him on the grassy area to the right of appellant's car. While Collins spoke to appellant, his partner, Trooper Michael Kline, watched the other occupant of the car, Rogelio Garduno.

Appellant had a California driver's license, but the car he was driving was registered in Texas. Appellant told Collins that the car belonged to a friend who was in Mexico. Appellant said he was living in Dallas, but had been in Austin looking for work for a couple of days. Asked by

2

Collins where he had spent the night, appellant said Dallas. He told the officer that he and Garduno left Dallas at 3:00 a.m. to drive to Austin, arriving at 6:00 a.m. Appellant said the job in Austin proved unacceptable, and he and Garduno were returning to Dallas. Appellant did not know his address in Dallas. Questioned separately, Garduno told the officers that he and appellant lived in Austin and were going to Dallas to look for work. Both appellant and Garduno appeared to be extremely nervous. On the videotape, Collins can be heard remarking that each was "shaking like a leaf."

Collins went to his patrol car and called for a canine unit. He then returned to appellant and asked him if he had any drugs in the car. Appellant's response is not audible on the videotape. Collins then asked appellant for permission to search the car. Appellant replied, "What?" The officer repeated the question and then asked, "Do you mind if I look?" Appellant responded, "No, go ahead." At this point, appellant had been stopped for about eleven minutes.

Collins began to search the interior of the car. He found a can of carpet freshener and, in the glove compartment, a rubber ring or plug that "went in the gas pipe." The back seat was loose. Collins testified that he knew that drugs were often concealed under the back seat or in the gas tank of an automobile. Collins was unable to open the trunk of the car with the key. Appellant opened it for him. The trunk contained laundry detergent and a bottle of bleach. In light of appellant's claim that he and Garduno had gone to Austin for work, Collins considered it significant that no tools or work clothes were in the car.

Deputy Sheriff John Stanley and his dog, Arco, arrived just over twenty minutes after appellant was stopped. Stanley testified that he was a certified dog handler with 800 hours of

3

training. He was a certifying official with both the state and national associations for police patrol and narcotics dogs. Stanley had been Williamson County's canine handler since 1994, and had trained and certified six dogs for narcotics detection. Arco had been purchased by the sheriff's department in September 1998, trained by Stanley, and certified as a narcotics dog in December 1998. On a previous occasion, Arco had discovered marihuana in the gas tank of a vehicle. By the time of appellant's suppression hearing, Arco had discovered narcotics on three additional occasions. Stanley testified that Arco had never falsely alerted.

Stanley had trained Arco to alert to the presence of drugs by sitting. Arco failed to alert as he was first walked around appellant's car. But he immediately sat when Stanley opened the right rear door. Allowed to enter the rear of the car, Arco began to bite the back seat where it abutted the door. Stanley considered this to be another alert, and attributed Arco's biting (rather than sitting) to his training as a patrol dog. At this point, Collins told appellant that because the dog had alerted to the car, the officers had probable cause to believe narcotics were present. Appellant had now been stopped for thirty minutes.

The officers continued to search the back seat area, trunk, and underside of appellant's car without success. At 10:50, appellant and Garduno were permitted to reenter the car. Appellant, led by Deputy Stanley and followed by Trooper Collins, then drove to a service station in Georgetown where the search was resumed at about 11:15 a.m. At 11:50, Collins found four packages of cocaine inside the right rear door of appellant's car. Appellant was advised of his rights, after which he told Collins that he had gotten the cocaine in Mexico.

4

Appellant concedes that the initial stop of his car was lawful. He contends, however, that instead of issuing a traffic ticket and permitting him to be on his way, the officers detained him without reasonable suspicion to investigate the possibility that he was transporting drugs. A traffic stop is analogous to a temporary investigative detention. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Such a detention may last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis v. State*, 947 S.W.2d 240, 243-45 (Tex. Crim. App. 1997). Appellant urges that ordering him out of his car and questioning him about his residence and reason for traveling was unlawful because it "had nothing to do with the already solved question regarding the license plate."

Requests for a driver's license or other identification, proof of insurance, and information regarding ownership of the car and the destination and purpose for the trip are proper inquiries following a traffic stop. *See Davis*, 947 S.W.2d at 245 n.6; *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). To permit these inquiries to be made with greater safety, a police officer may ask the driver of the stopped car to step out of the vehicle and onto the side of the road. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Appellant's contention that Collins's initial questioning of him outside the car exceeded the proper scope of the traffic stop is without merit.

Appellant also contends the officers did not have a lawful basis for detaining him for the drug dog. Articulable facts and circumstances that come to an officer's attention during the course of a routine traffic stop may justify a continued detention and broader investigation. *See Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. 1979); *Mohmed*, 977 S.W.2d at 628. If the officer

has a reasonable suspicion that the automobile contains narcotics, he may temporarily detain it to allow an olfactory inspection by a trained police dog. *See Crockett v. State*, 803 S.W.2d 308, 310-11 (Tex. Crim. App. 1991); *see also Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (test for reasonable suspicion). When Collins looked inside appellant's car, he immediately noticed the powdered carpet cleaner covering the rear seat and floor. From his training and experience, the officer knew that carpet cleaner and air fresheners like the one hanging from appellant's mirror were commonly used to hide the odor of drugs. Both appellant and his passenger were very nervous. Appellant's statements regarding where he had been and where he was going were confusing and contradictory, and were inconsistent with statements made by his passenger, Garduno. These specific, articulable facts and the rational inferences arising from these facts gave Collins a reasonable basis for suspecting that appellant was smuggling drugs. *See Fields v. State*, 932 S.W.2d 97, 105 (Tex. App.—Tyler 1996, pet. ref'd); *Bustamante v. State*, 917 S.W.2d 144, 146 (Tex. App.—Waco 1996, no pet.); *Foster v. State*, 814 S.W.2d 874, 879 (Tex. App.—Beaumont 1991, pet. ref'd). Appellant's contention that the detention of his car for inspection by the drug dog was not based on reasonable suspicion is overruled.

Collins and his partner began searching the interior of appellant's car before the dog arrived, after obtaining appellant's consent to do so. Appellant contends his consent was involuntary.[1] *See Reasor v. State*, 12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000) (voluntary consent is exception to Fourth Amendment warrant requirement; search after voluntary consent is not

---

[1] Appellant also urges that the consent was tainted by his unlawful detention. Having found that the detention was lawful, we do not address this contention.

unreasonable under Texas Constitution article I, section 9). To be valid, a consent to search must be positive and unequivocal, and must not be the product of duress or coercion, either express or implied. *See Carmouche*, 10 S.W.3d at 331 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). Voluntary consent is not shown by a mere acquiescence to a claim of lawful authority. *See id.* (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Whether consent was given voluntarily is a question of fact to be determined from the totality of the circumstances. *See Schneckloth*, 412 U.S. at 227; *Reasor*, 12 S.W.3d at 818. The State bears the burden of proving voluntary consent by clear and convincing evidence. *See Reasor*, 12 S.W.3d at 818; *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997).

To support his claim that his consent to the search was coerced, appellant points out that Collins and his partner were in full uniform and armed. He also alleges that after stopping appellant, Collins made a series of "demands" and "confronted Appellant, asking a series of invasive, personal questions." Appellant was frisked by Collins, who he says made "repeated requests to search" the car. Collins did not inform appellant that he could refuse these requests. Appellant adds that he is a Mexican citizen, has difficulty with English, and "may not have recognized" that compliance with Collins's requests was not required.

While it is true that the officers were in uniform and armed, they did not remove their weapons from their holsters or engage in any show of force beyond frisking appellant and Garduno. The "demands" to which appellant refers were instructions to exit the car and step to the side of the road for safety reasons. The "invasive, personal questions" concerned appellant's address and reason for traveling, and were the sort routinely made following traffic stops. On the videotape, Collins was

7

courteous to appellant and spoke to him in a conversational manner. Appellant spoke to Collins in heavily accented but clear English. He gave prompt, appropriate answers to Collins's questions. On one occasion, appellant indicated to Collins that he did not understand the officer, but he otherwise did not display any language difficulty. Collins repeated his request to search the car for the apparent purpose of ensuring that appellant understood what he was asking, and appellant's affirmative response was prompt and seemingly unforced. Appellant later opened the trunk for the officer when Collins had difficulty with the key. Collins's failure to advise appellant that he could refuse to consent to the search of his car is probative on the issue of voluntariness, but not determinative. *See Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985). Appellant's suggestion that, as a Mexican citizen, he "may not have recognized" that he was free to refuse a police officer's request is pure speculation; appellant did not testify at the suppression hearing.

Having reviewed the entire record, including the videotape of the stop and subsequent activity, we conclude that there was clear and convincing evidence that appellant voluntarily consented to the search of his car. Appellant's contention to the contrary is overruled.

Appellant next contends that the scope of his consent was exceeded when Arco, the drug dog, was placed inside the car. The extent of a search is limited to the scope of the consent given, and the scope of the consent is generally defined by its expressed object. *See Dubose v. State*, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996), *overruled on other grounds*, *Guzman*, 955 S.W.2d at 90. Collins asked for permission to search appellant's car immediately after asking appellant if the car contained drugs. The object of the requested search was obviously drugs, and the subsequent search, including the use of the trained dog, did not exceed the scope of the consent given.

8

Appellant urges that the officers did not have probable cause to search the interior of his car with the dog. Because the car was searched with appellant's voluntary consent, the probable cause issue is irrelevant. Appellant also argues that Arco's reliability and accuracy were not established, and therefore his alert did not give the police probable cause to seize the car and take it to the service station for a further search. Because the search at the station was a continuation of the search begun beside the highway, to which appellant gave his voluntary and unrevoked consent, the question of probable cause is again irrelevant. Finally, appellant contends his detention became an unlawful arrest without probable cause when the car was taken to the station. The record does not reflect, however, that any evidence was seized as a result of this alleged arrest. *See Keen v. State*, 626 S.W.2d 309, 314 (Tex. Crim. App. 1981).

The district court did not err by overruling the motion to suppress. Point of error one is overruled.

In his second point of error, appellant contends the court erred by refusing to instruct the jury pursuant to article 38.23. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West Supp. 2000). This statute provides that in any case in which the issue is raised, the jury should be instructed to disregard evidence that it believes, or has a reasonable doubt, was obtained in violation of the constitution or laws of Texas or of the United States. It is appellant's principal contention under this point of error that the jury should have been instructed to disregard the cocaine found in his car unless it was satisfied that he voluntarily consented to the search.

An article 38.23 instruction is required when there are factual disputes as to how the evidence was obtained. *See Bell v. State*, 938 S.W.2d 35, 48 (Tex. Crim. App. 1996); *Thomas v.*

9

*State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986); *Hall v. State*, 649 S.W.2d 627, 628 (Tex. Crim. App. 1983); *Broadnax v. State*, 995 S.W.2d 900, 902 (Tex. App.—Austin 1999, no pet.). When there is no conflicting testimony regarding the relevant facts, no jury instruction is required. *See Lackey v. State*, 638 S.W.2d 439, 455 (Tex. Crim. App. 1982); *Broadnax*, 995 S.W.2d at 902. Appellant does not refer us to any evidence in the record raising a controverted issue of fact relevant to the voluntariness of his consent to the search of his car. Instead, appellant merely asserts without elaboration that the videotape "raises the issue of whether the consent was voluntary." He adds, "the arresting officer was vigorously cross-examined on both the facts and his conclusions." We have viewed the videotape and examined the trial testimony. We find no self-evident conflict in the evidence that called for a jury instruction.

Appellant lists several other issues as to which he claims an article 38.23 instruction should have been given: "whether the scope of the consent, if any, was exceeded; whether the duration of the detention amounted to an arrest without probable cause; whether the detention was supported by reasonable suspicion; whether the dog was properly trained; and whether the dog truly alerted." He offers no further argument and makes no effort to show that there were contested issues of fact relevant to these matters.

The district court did not err by refusing the requested instruction. Point of error two is overruled.

The judgment of conviction is affirmed.

10

_____

Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed:   October 5, 2000

Publish

11