Opinion issued January 9, 2003













In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00874-CR
____________
 
STATE OF TEXAS, Appellant
 
V.
 
MANUEL GARZA, JR., Appellee
 

 
 
On Appeal from the 253rd District Court
Chambers County, Texas
Trial Court Cause No. 11543
 

 
 
O P I N I O NManuel Garza, Jr., appellee, pleaded not guilty to the offense of possession of cocaine
in an amount greater than four grams but less than 200 grams.


 In a punishment enhancement
paragraph, the State alleged appellee used and exhibited a firearm during the offense.


 The
trial court granted appellee’s motion to suppress.
Background
           On September 21, 2000, Chambers County Deputy Sean Kiley was on his way to work
in a marked car when he noticed appellee fail to yield the right of way. Deputy Kiley was
driving north on Highway 146 as he approached the intersection with Pinehurst Street. There
was no stop sign or stop light on 146, but there was a stop sign on Pinehurst. Appellee
turned from Pinehurst onto 146 without coming to a stop. Deputy Kiley was forced to lock
his brakes and swerve to prevent colliding with him.
           Deputy Kiley stopped appellee and videotaped the stop. Kiley noticed that appellee
was shaking and his face was twitching, which Kiley found to be excessive nervousness for
a routine stop. After checking appellee’s driver’s license at Kiley’s request, the dispatcher
indicated that appellee had no outstanding warrants but that he had an out-of-state criminal
history. The dispatcher proceeded to run an out-of-state rap sheet. While the dispatcher was
still running the out-of-state rap sheet, and before returning appellee’s driver’s license, Kiley
questioned appellee about his travel plans. Appellee told Kiley that he was driving to
Houston to visit a friend and get a job. Appellee continued to look nervous, so Kiley asked
for permission to search the van. Appellee responded to the request by explaining why he
failed to yield the right-of-way. 
           When he did not get consent to search, Kiley questioned appellee’s female passenger. 
The passenger told Kiley a different story from appellee’s.


 Kiley took her license but did
not immediately check and clear it. He again asked to search the van. This time, appellee
responded by asking if he would get in trouble for having a gun. Kiley told appellee he
might get in trouble and asked appellee where the gun was. Appellee indicated that the gun
was in the center console and agreed to let Kiley search the console. The search began
within nine minutes of the stop. 
           Inside the console, Kiley found a number of empty cigarette boxes, one of which had
a baggy sticking out with what the officer recognized as marihuana inside. Kiley also found
a .380 caliber firearm in the bottom of the console. Kiley placed appellee under arrest. After
a more thorough search of the van, Kiley found more marihuana and several bags of cocaine
in the console. 
           Appellee filed a motion to suppress the evidence. Deputy Kiley was the only witness
at the hearing. In support of the motion, appellee’s counsel contended that appellee was
illegally detained because Kiley did not have reasonable suspicion to detain him beyond the
stop for the traffic violation. Additionally, he argued that appellee’s consent to retrieve the
gun from the center console was involuntarily given because Kiley threatened to bring a
canine unit to the scene. Kiley admitted that he “might have” told appellee he would bring
a drug dog to the scene.
           At the conclusion of the hearing, the court expressed its concern over the proper
application of the law to the facts. Subsequently, after reviewing the case law, the trial court
granted the motion to suppress. It did not file findings of fact or conclusions of law.
           In its sole point of error, the State argues that the trial court erroneously granted
appellee’s motion to suppress.
Standard of Review

           In a motion-to-suppress hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. State v. Ballard, 987
S.W.2d 889, 891 (Tex. Crim. App. 1999). When the trial court fails to file findings of fact,
as it did here, we view the evidence in the light most favorable to the trial court’s ruling and
assume that the court made implicit findings of fact that support its ruling, as long as those
findings are supported by the record. See Carmouche v. State, 10 S.W.3d 323, 328 (Tex.
Crim. App. 2000). We are required to afford almost total deference to the trial court’s
determination of historical facts when that determination is based on an evaluation of
credibility and demeanor, while conducting a de novo review of mixed questions of law and
fact not falling within that category. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).



           If the trial court’s findings are supported by the record, we consider only whether the
court incorrectly applied the law to the facts. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). Even in the absence of detailed findings of fact, in situations when the
officer was the sole witness to testify and the trial court makes comments on the record that
either explicitly or implicitly indicate that it accepted the officer’s version of the facts, we
conduct a de novo review of the law and the facts as testified to by that witness. See State
v. Cardenas, 36 S.W.3d 243, 245 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).
Discussion
           In its appellate brief, the State contends that (1) Officer Kiley’s credibility was not
questioned by the trial judge and, therefore, is not an issue in the case; (2) the trial court
found that there was valid consent to search; and (3) the issue upon which the trial court
based its suppression order was an incorrect interpretation of the case law regarding
investigation and detention following a valid traffic stop. We agree that credibility is not an
issue here; thus, we limit our review to the issue of consent and we examine de novo the trial
court’s application of the law to the facts. See Guzman, 955 S.W.2d at 89.
           Scope of Investigative Detention
           The State contends that the trial court based its suppression order on an incorrect
interpretation of the case law regarding investigation and detention following a valid traffic
stop. Because the legality of the detention pertains to the application of the law to the facts,
we review appellant’s contention de novo. See Carmouche, 10 S.W.3d at 327.
           The trial court implicitly found that Deputy Kiley stopped appellee’s car because
appellee failed to yield the right-of-way. See Tex. Transp. Code Ann. § 545.151(a)(1)
(Vernon 1999). An officer may lawfully stop and detain a person who commits a traffic
violation. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); Cardenas, 36
S.W.3d at 246. Accordingly, we conclude that it was reasonable for Deputy Kiley to conduct
an investigation of the traffic infraction.
           A routine traffic stop resembles an investigative detention. Berkemer v. McCarty, 468
U.S. 420, 439, 104 S. Ct. 3138, 3149-50 (1984); Cardenas, 36 S.W.3d at 246; Martinez v.
State, 29 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d). To determine
the reasonableness of an investigative detention, we apply the Terry test: (1) whether the
officer’s action was justified at its inception; and (2) whether it was reasonably related in
scope to the circumstances that justified the initial interference. See Terry v. Ohio, 392 U.S.
1, 19-20, 88 S. Ct. 1868, 1879 (1968); Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App.
1997).
           During a traffic stop, an officer has a right to check for outstanding warrants and to
request: (1) a driver’s license; (2) insurance papers; and (3) identification. Davis, 947
S.W.2d at 245 n.6. Additionally, the officer may ask about the driver’s destination and
purpose of travel during a valid detention, although neither the driver nor the passenger is
compelled to answer these questions. Cardenas, 36 S.W.3d at 246. The detention must be
temporary and may last no longer than necessary to determine why the person was driving
in the manner he was unless the officer has reasonable suspicion to believe another offense
is being committed. Cardenas, 36 S.W.3d at 246. The officer is entitled to rely on all the
information obtained in the course of his contact with the citizen in developing the facts that
would justify the continued investigatory detention. Bustamante v. State, 917 S.W.2d 144,
146 (Tex. App.—Waco 1996, no pet.).
           This case is similar to our previous decision in Cardenas. In that case, we held that
the officer’s questioning was reasonably related to the traffic stop investigation and that the
officer was well within the temporal scope of the initial investigation when, after he asked
the defendant for his license and questioned him about his whereabouts, the defendant
reacted nervously, the passenger’s story conflicted with the defendant’s, and less than five
minutes had passed before the officer began questioning the defendant. Cardenas, 36
S.W.3d at 246. Here, similarly, appellee acted nervous, gave a story that conflicted with his
passenger’s, and answered evasively when the officer asked for permission to search the
vehicle. 
           When the initial detention is based on a traffic violation, various combinations of
factors will support a reasonable suspicion of criminal activity, sufficient to justify a
continued detention or further questioning unrelated to the traffic violation. Powell v. State
5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref’d). Nervousness and inconsistent
stories among the car’s occupants constitute such factors. See Estrada v. State, 30 S.W.3d
599 (Tex. App.—Austin 2000, pet. ref’d); Simpson v. State, 29 S.W.2d 324 (Tex.
App.—Houston [14th Dist.] 2000, pet. ref’d); Zervos v. State, 15 S.W.3d 146 (Tex.
App.—Texarkana 2000, pet. ref’d); Bustamante v. State, 917 S.W.2d 144 (Tex. App.—Waco
1996, no pet.).
           In Estrada, the officer looked inside the car and discovered powdered carpet cleaner
covering the rear seat and floor. He testified that, in his training and experience, he knew
carpet cleaners and air fresheners like the one hanging from Estrada’s mirror were commonly
used to hide the odor of drugs. Estrada, 30 S.W.3d at 603. Estrada and his passengers
appeared “very nervous” and all gave inconsistent statements. Id. The Austin Court of
Appeals overruled Estrada’s argument that the detention of his car for inspection was not
based on reasonable suspicion. Id. 
           In Simpson, the court found that, in addition to Simpson’s nervousness, the officer had
reasonable suspicion to detain because Simpson immediately got out of the car when he was
stopped and put his keys in his pocket, gave abrupt and unsure answers to the officer’s
questions, and misstated his criminal history. Simpson, 29 S.W.3d at 329.
           In Zervos, the officers noticed that Zervos was “extremely nervous and was shaking,” 
his hands shook, he paced back and forth nervously, he constantly crossed and uncrossed his
arms, and he continually took change out of his pocket and counted it. Zervos, 15 S.W.3d
at 152. He refused to look at the officer and gave three inconsistent statements as to his
immediate whereabouts. Id. The Texarkana Court of Appeals held that these facts and the
circumstances were sufficient to show that, during the course of the valid investigative stop
and before issuing Zervos a ticket or warning citation, the officers developed a reasonable,
objective suspicion that Zervos was engaged in some other kind of unlawful activity. Id. at
152-53. 
           Finally, in Bustamante, the officers noticed that Bustamante’s address was incorrect
on his driver’s license, he could not tell the officer where he had been, and a screw was out-of-place on Bustamante’s car door. Bustamante, 917 S.W.2d at 146. The officer testified
that contraband is often concealed in car doors. Id. The Waco Court of Appeals held that
these facts, in addition to the facts that Bustamante was nervous and that he and his
passengers had conflicting stories, justified the trial court’s finding that the officers’
continued detention to investigate the screw was lawful. Id. 
           In the instant case, Kiley noticed that appellee was shaking and his face was twitching,
which Kiley thought was excessive nervousness for a routine traffic stop. Although
appellee’s driver’s license cleared, the dispatcher indicated that appellee had an out-of-state
rap sheet. While the dispatcher was checking appellee’s out-of-state record, Kiley sought
permission to search appellee’s car and received an evasive response. Kiley immediately
questioned appellee’s female passenger and discovered that her story conflicted with
appellee’s. The traffic stop and investigative detention lasted nine minutes, including
questioning, and concluded with appellee’s consent to search before the dispatcher had
completed his out-of-state check of appellee’s record and conducted a check of appellee’s
passenger’s license. These facts justified an investigative detention.
           Voluntariness of consent to search
           Finally, the State contends that Kiley had valid consent to search appellee’s car. We
agree.
           Only after Kiley had received an evasive response to his first request for permission
to search appellee’s vehicle, and had received inconsistent stories from appellee and
appellee’s passenger, did he again request permission to search the car. This time, appellee
volunteered the information that he had a gun in the console and asked Kiley whether he
could get in trouble for that. After Kiley told him ‘yes,’ appellee gave Kiley permission to
search the console for it. He discovered not only the gun, but also narcotics, in the console
and placed appellee under arrest.
           The voluntariness of consent to search is a question of fact to be determined from the
totality of the circumstances. Simpson, 29 S.W.3d at 329. The consent may not be coerced
by “covert force, implied threat, or otherwise.” Id.; see Carmouche, 10 S.W.3d at 331. The
voluntariness of the search involves mixed questions of law and fact. Simpson, 29 S.W.3d
at 329-330. Voluntariness must be proved by clear and convincing evidence. Reasor v.
State, 12 S.W.3d 812, 817-18 (Tex. Crim. App. 2000); Estrada, 30 S.W.3d at 604. 
           Here the record establishes that the search did not occur until appellee had volunteered
the information that he had a gun in the car, had been informed that he might get in trouble
for that, and nevertheless freely gave consent to search the console. The extent of the search
was limited to the scope of the consent given—namely, to search the console. See Estrada,
30 S.W.3d at 604. We hold that appellee freely and voluntarily consented to the search.



           We sustain appellant’s sole point of error.
           We reverse the judgment of the trial court and remand the cause.

 

                                                                  Evelyn V. Keyes
                                                                  Justice


Panel consists of Justices Hedges, Keyes, and Evans.




Do not publish. Tex. R. App. P. 47.