# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00765-CR

**Kym Ray Perrucci, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 65,453, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Kym Ray Perrucci of the felony offense of possession of cocaine in an amount of less than one gram. After Perrucci pled true to enhancement paragraphs alleging two prior felony offenses, the jury assessed punishment at six years in prison. Perrucci challenges his conviction, contending that the trial court erred by ordering him to pay court appointed attorney's fees without first determining his ability to pay, allowing the prosecution to discuss the application of parole law to him during his sentencing, denying his motion to suppress evidence, and denying his requested jury instructions. We will modify the judgment on the payment of the court appointed attorney's fees and affirm the judgment as modified.

## BACKGROUND

At a pretrial suppression hearing, the trial court heard evidence that Officer Josh Moore of the Temple Police Department stopped Perrucci's car in Temple at night for failing to have a functioning light over the rear license plate and for inching into an intersection on a

red light.  The court also reviewed a patrol-car video recording of the traffic stop that broadcast some audio from Moore's body microphone.  Moore recalled some unusual circumstances about his interaction with Perrucci:  he was unable to produce his driver's license when it was requested, he asserted that he was going to a gas station (having just passed one), he appeared nervous, and he seemed to be concealing his right hand.  Because of Perrucci's actions, Moore requested consent to search Perrucci's car.  Perrucci refused.  Moore attempted to summon a canine unit to the scene, but none were available.

In accordance with police department policy, Moore called his supervisor seeking permission to make an arrest for failure to display a driver's license.  He received that permission and arrested Perrucci.  Moore estimated that the length of time from the stop to the arrest was "roughly twenty minutes."  Before beginning a pat-down search, Moore asked Perrucci whether he had anything in his pocket that might poke, stick, or hurt Moore.  Perrucci stated truthfully that he did not.  As Moore was placing Perrucci in the patrol car, Perrucci admitted that he had some needles[1] containing cocaine underneath some clothes on the passenger seat of his car.  Moore cautioned the other responding officers not to go into Perrucci's car because of the needles.  Moore donned gloves and proceeded to search the car, where he found a syringe containing clear liquid, a spoon with white residue, and a baggie that was later determined to contain 0.31 grams of cocaine.  After finding the evidence in Perrucci's car, Moore talked to Perrucci about possibly becoming a confidential informant.  Perrucci agreed to speak with the narcotics division and was transported to the Temple Police Department where he met with narcotics agent Amanda Locklear.

---

[1]  Although questions and testimony at the suppression hearing referenced "needles," the evidence admitted at trial consisted of a single syringe.  The officers in the patrol car video refer to additional "clean needles" in the car door.

2

Perrucci also testified at the pretrial suppression hearing. He acknowledged that he told Moore about the drugs in the front seat of the car without any prompting from the officer: "I knew what the officer was after, whenever he came up to my car initially and asked to search it, they know what they're looking for, when we're—so, yeah I volunteered that." Perrucci asserted that he made his statement out of concern for the officers' safety because he had hepatitis C.

The trial court denied Perrucci's motion to suppress his statement to Moore and the evidence of cocaine, and the case proceeded to trial. The jury heard testimony from three State's witnesses: Officer Moore; Mona Herring, a property and evidence intake tech with the Temple Police Department; and Brian Kivlighn, a forsensic scientist with the Texas Department of Public Safety's crime lab. Herring testified about the chain-of-custody of the evidence that the police department received and sent to the lab, including the baggie, spoon, and syringe. Kivlighn confirmed that the substance in the syringe was cocaine.

Perrucci testified in his own defense at trial, admitting that he knowingly and intentionally possessed the cocaine, that it was on the front passenger seat of his car, and that he had shot up cocaine earlier on the day of his arrest. He further testified that he did not know whether his car's license-plate light was out, that he had not produced his driver's license from the time of his stop until the time of his arrest, and that his statement about the cocaine-containing syringe in his car was not made in response to a question from Moore. Perrucci agreed that his statement was voluntary and denied that his statement was the result of coercion, threat, or force. Perrucci also informed the jury that he had been convicted in 2004 for the felony offenses of possession of less than one gram of heroin and possession of Oxycodone and that he had been sentenced to fifteen months in jail.

The jury found Perrucci guilty of the state jail felony offense of possessing less than one gram of cocaine, *see* Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .115(a), (b) (West 2010), Perrucci pled true to enhancement paragraphs alleging two prior state jail felony offenses that made his current offense eligible for punishment as a third-degree felony, *see* Tex. Penal Code Ann. § 12.42(a)(1) (West Supp. 2010), and the jury assessed a six-year prison term as punishment. Following the jury's verdict of guilt and assessment of punishment, the trial court signed a judgment sentencing Perrucci to six years in prison and ordering him to pay court costs and attorney's fees, if he were able. Perrucci now appeals.

## ANALYSIS

**Payment of attorney's fees**

The trial court's order states "**DEFENDANT TO PAY COURT COSTS AND ATTORNEYS FEES, IF ABLE, UPON RELEASE FROM INCARCERATION.**" In his first issue, Perrucci contends that the trial court erred by ordering him to pay $2,253.00 for his court-appointed attorney's fees without sufficient evidence to demonstrate that he had the ability to pay those fees. The State agrees that the record is silent on any material change in Perrucci's circumstances since determination of his indigency and that the proper remedy is to reform the judgment by removing the order for payment of court-appointed attorney's fees.

A trial court may order a defendant to pay for his court-appointed legal counsel only if the court determines that the defendant has financial resources enabling him to pay. Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2010). Because financial resources and ability to pay are "critical elements" under article 26.05(g) that must be supported by the record, we review a

4

trial court's order that a defendant pay court-appointed attorney's fees for sufficiency of the evidence. *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). We measure sufficiency of the evidence by viewing all of the record evidence in the light most favorable to the verdict. *Id.* at 557. If the evidence does not support the order to pay attorney's fees, the proper remedy is to delete the payment order from the judgment. *See id.*

This record does not reflect that the trial court determined whether Perrucci had financial resources enabling him to pay the costs of his legal services. Instead, the record shows that Perrucci was afforded court-appointed counsel for trial and again on appeal because of his indigence. When a court determines that a defendant is indigent, there is a presumption that the defendant remains indigent for the remainder of the proceedings in the case "unless a material change in the defendant's financial circumstances occurs." Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2010). No material change in Perrucci's financial circumstances is referenced in this record. Thus, we conclude that the portion of the judgment ordering Perrucci to pay attorney's fees was improper. *See Mayer*, 309 S.W.3d at 555-56. We sustain Perrucci's first issue.

**Discussion of parole law**

In his second issue, Perrucci contends that the trial court erred by allowing the prosecution to discuss the application of parole law to him in closing argument during sentencing. While it is common knowledge that inmates are often paroled before serving their full sentences, juries in felony cases are prohibited from considering or applying parole law in assessing punishment. *Clark v. State*, 643 S.W.2d 723, 724-25 (Tex. Crim. App. [Panel Op.] 1982) (noting that prosecutor's argument went beyond general urging for lengthy penalty and focused on fact that defendant previously received 20-year sentence for conviction but was paroled after only

5

three years); *see also* Tex. Code Crim. Proc. Ann. art. 37.07 § (4)(c) (West Supp. 2010) (providing instruction that jury assessing punishment for offense punishable as third-degree felony is "not to consider the manner in which the parole law may be applied to this particular defendant.").

In support of this issue, Perrucci notes that during his sentencing-phase questioning before the jury, the prosecutor discussed Perrucci's previous fifteen-month incarceration in state jail—noting that it was served "day-for-day . . . you don't parole from state jail. . . . just do the straight time. Fifteen months means 15 calend[a]r months to the day"—and contrasted that with parole-eligible offenses by noting that a full sentence may not be served in prison. The prosecutor then began to discuss the charge and explained the concept of "quarter time":

> It says under law applicable in this case, if the defendant is sentenced to a term of imprisonment he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed. Of course eligibility for parole does not guarantee parole will be granted and you can't consider parole for this defendant, but you're allowed to be made aware of the existence of parole and how it applies in general to defendants. What does that just mean, one-quarter of the sentence? I get a lot of questions. I talk to some jurors after trials, and they always have the same questions. What does that mean one-quarter?
>
> [Defense counsel]: Objection, Your Honor. I'd ask him not to make any comments other than what the legislature has asked us to say about parole.
>
> THE COURT: Sustained.
>
> [Prosecutor]: Judge, I'm allowed to explain the law.
>
> THE COURT: Okay.
>
> [Prosecutor]: Parole eligibility, one-quarter time, that's what this says under the law applicable in this case, if the defendant is sentenced to a term of imprisonment he will not become eligible for parole until the actual time served plus good conduct time is one-fourth of the sentence imposed. Like I said, eligibility for parole does not guarantee that parole will be granted. Now you have heard here that the range is, two to ten years in prison, but we're dealing with potential quarter time for parole. So what does that mean by way of quarter time? That means if you sentence *him* to

6

two years well, if a defendant, *not this defendant*, but if a defendant is sentenced to two years in prison, parole could look at *him* after he serves half a year, six months. If a defendant is sentenced to say four years in prison, a quarter of that is a year. And *not this defendant*, but a defendant in a case that parole is looking at could look at him in that time. Ten years turns into two and a half years for parole could conceivably grant parole for an individual. That's what quarter time means. All right. That's basically what they're saying in that language about the time he won't become eligible for parole until the actual time served plus good conduct time is one-fourth of the sentence imposed. That's what you have in front of you. Ladies and gentlemen, he did 15 months last time. The way I look at that, *that should serve as the floor* because he should have learned from that. He had the opportunity the first time he was caught on probation to learn not to do this stuff, to avoid it, to get the help he needs. He had the opportunity when he was—

[Defense counsel]: Objection, Your Honor. He's arguing how the parole law is going to be applied to this defendant.

THE COURT: Overruled.

(Emphasis added.) Perrucci contends that the prosecutor's argument asked the jury to consider the application of parole law to him, particularly when the prosecutor asked the jury to consider fifteen months as the "floor" of his sentencing range.

The State argues that the defense's second objection was untimely and not sufficiently specific and any error in the argument after the trial court sustained the first objection was waived. Failure to preserve error through contemporaneous objection waives an improper parole-eligibility argument. *Kelley v. State*, 968 S.W.2d 395, 402 (Tex. App.—Tyler 1998, no pet.) (ruling that error was waived for failure to request instruction to disregard and to object at all when argument renewed); *see* Tex. R. App. P. 33.1(a). Concluding that the defense's objection preserved error on the parole-eligibility argument, we turn to Perrucci's second issue.

Not every mention of parole laws necessitates reversal. *Clark*, 643 S.W.2d at 725. The code of criminal procedure requires that the jury be given certain instructions that include

7

information about parole eligibility. *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007) (citing Tex. Code Crim. Proc. Ann. art. 37.07 § (4)(a)). Prosecutors may discuss parole-eligibility formulas and give concrete examples of their application. *Id.* (reversing appellate court ruling because prosecutor's explanation of how parole-eligibility rules in jury charge worked with forty, sixty, and seventy-five year sentences merely ensured that jury understood their instructions); *see also Taylor v. State*, 911 S.W.2d 906, 910-12 (Tex. App.—Fort Worth 1995, pet. ref'd) (affirming conviction where prosecutor used poster to show jury how parole-eligibility formula worked but did not apply formula specifically to case being tried). Although the prosecutor made brief use of the word "him," the prosecutor clarified the generality of his reference by stating, "not this defendant, but a defendant." *See Taylor*, 233 S.W.3d at 359 (concluding that "prosecutor's passing use of the words 'defendant' and 'he' in the course of giving his explanation" about jury charge was insignificant, noting that statutory instruction itself uses words "defendant" and "he" when describing rules of parole eligibility). We conclude that the prosecutor's argument was an attempt to explain generally the meaning of the jury instructions rather than to specifically apply them to Perrucci. *See id.*

The prosecutor's argument that a fifteen-month sentence should be the "floor" of Perrucci's punishment range was not part of the examples about quarter time for parole eligibility. Even if we were to consider that argument as an improper application of parole law to Perrucci, it was harmless because fifteen months is less than two years, the lowest level of Perrucci's available punishment range. *See id.*; *see also* Tex. Penal Code Ann. § 12.34 (West Supp. 2010); Tex. R. App. P. 44.2(b). We overrule Perrucci's second issue.

**Motion to suppress**

In his third issue—briefed within his complaints about requested jury instructions—Perrucci contends that the trial court erred by denying his motion to suppress his statement to police about the needle and the evidence of cocaine because they were the products of an unreasonably long detention. The trial court made a finding that "[t]he approximate eighteen minute delay between the stop of the defendant and his arrest for failure to produce a driver's license was not unreasonable based on the surrounding circumstances."

When reviewing the denial of a motion to suppress, we apply a bifurcated standard, affording almost total deference to the trial court's determination of historical facts but reviewing de novo a trial court's application of the law of search and seizure to the facts. *State v. Valtierra*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When, as here, the trial judge makes express findings of fact, we view the evidence in the light most favorable to the judge's ruling and determine whether the evidence supports the factual findings. *Id*. If the ruling on the motion to suppress is "reasonably supported by the record and is correct under any theory of law applicable to the case," it will be sustained. *Id.* at 447-48 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

The Fourth Amendment's protection against unreasonable searches and seizures extends to all seizures of the person, including those that involve only a brief detention. *United States v. Mendenhall*, 446 U.S. 544, 551 (1980); *see Leach v. State*, 35 S.W.3d 232, 235 (Tex. App.—Austin 2000, no pet.); *see also* U.S. Const. amend. IV. An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that a person is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Investigative detentions such as traffic stops must be temporary and last no longer than necessary to effectuate the purpose of

the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The Supreme Court has rejected rigid time limitations on investigative detentions, instead asking "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Kothe*, 152 S.W.3d at 64-65 & n.41 (quoting *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) (refusing to "establish a per se rule that a 20-minute detention is too long")). An officer who has concluded an investigation of the conduct that initiated the stop may continue to detain a person only if there is reasonable suspicion to believe that another offense has been or is being committed. *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997).

Whether reasonable suspicion exists is determined by considering the facts known to the officer at the time of the detention. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Davis*, 947 S.W.2d at 243. Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, No. PD-0176-10, 2011 Tex. Crim. App. LEXIS 112, at *16 (Tex. Crim. App. Jan. 26, 2011); *Ford*, 158 S.W.3d at 492; *see also Terry*, 392 U.S. at 21-22. This is an objective standard, applied by considering the totality of the circumstances. *Derichsweiler*, 2011 Tex. Crim. App. LEXIS at *16.

Perrucci contends that he was led to state that he had a needle containing cocaine in his car because of his unreasonably long detention. However, police officers on a routine traffic stop may conduct information-gathering tasks such as asking about the driver's destination and purpose for the trip, *Estrada v. State*, 30 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd), requesting

10

a driver's license and car registration, and conducting a computer check on that information. *Kothe*, 152 S.W.3d at 63. These lawful information-gathering tasks were among the activities conducted by Moore during the traffic stop, as reflected in the trial court's findings:

> During the eighteen minutes, Officer Moore spoke with defendant, considered a story defendant told about his activities that did not make sense, made observations regarding defendant's behavior, attempted to identify defendant without defendant producing a driver's license or identification card, ran defendant's name to confirm his identity, ran defendant's name to check for outstanding warrants, ran defendant's name to make sure he had a valid driver's license, requested consent to search defendant's vehicle, called for a K-9 Officer to respond, and briefed a superior officer to make the determination whether defendant should be arrested.

Based on those findings, the court concluded: "The approximate eighteen minute time period is not an unreasonable amount of time to detain defendant based upon the surrounding circumstances."

Further, the record demonstrates that Perrucci chose to make the statement about the needle containing cocaine while getting into the patrol car after his arrest, not during the temporary investigative detention. Moore's reasonable suspicion that Perrucci was or had been violating the law—i.e., having a non-illuminated license-plate light, driving into an intersection on a red light, and failing to produce a driver's license—justified the temporary detention, and Moore diligently pursued a course of investigation to confirm or dispel that suspicion in a timely manner. Nothing in this record suggests that the duration of Perrucci's detention, given his failure to produce his driver's license, was unreasonable. The trial court's ruling on the motion to suppress is reasonably supported by this record, and we conclude that the court did not err in denying Perrucci's motion to suppress. Perrucci's third issue is overruled.

**Jury instructions**

In his fourth issue—briefed within his third issue on the motion to suppress—Perrucci contends that the trial court erred by denying three instructions directing the jury to disregard evidence resulting from: (1) Perrucci's unlawful detention for an excessive period of time, (2) coercive police practices to obtain Perrucci's statement, and (3) Perrucci's involuntary statement. *See* Tex. Code Crim. Proc. Ann. arts. 38.22 § 6, .23(a) (West 2005). Perrucci's analysis does not link these statutes to any particular instruction, but rather he cites globally to the range of pages in the record containing all the requested instructions. We discern that his first and second requests—about unlawful detention and coercive police practices—sought a specific voluntariness instruction for constitutional due process claims under article 38.23(a), and the third request—about his involuntary statement—sought a general instruction on voluntariness under article 38.22, section 6. *See Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008) (noting that first step in deciding upon appropriate jury instruction is identifying theory of involuntariness).

### 1. Unlawful detention instruction

Perrucci claims that a fact issue was raised under article 38.23(a) because, although Moore had probable cause to stop him for the traffic violation, he unlawfully detained him for an excessive period of time. The specific voluntariness instruction in article 38.23(a) states:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case *where the legal evidence raises an issue hereunder*, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained

12

in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a) (emphasis added). Thus, juries may be instructed to disregard statements of the accused under the exclusionary rule in article 38.23(a) if such statements were obtained in violation of the law, but this instruction is allowed "only if there is a factual dispute as to how the evidence was obtained." *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007) (quoting *Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986)). Evidence on the disputed fact issue must be affirmatively contested, and the contested fact issue must be material to the lawfulness of the challenged conduct in obtaining the statement alleged to be involuntary. *Oursbourn*, 259 S.W.3d at 177 (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). In the absence of a fact issue about how evidence was obtained, there is nothing for the jury to decide under article 38.23(a). *Vasquez*, 225 S.W.3d at 545.

Perrucci argues that fact issues existed about the reasonableness of his detention, such as whether he ran a red light at the intersection and whether he had his driver's license with him. We disagree. Perrucci acknowledges that Moore had probable cause to stop Perrucci. The color of the traffic light when Perrucci was at the intersection, before he was stopped by Moore, is irrelevant to the length of the investigative detention that followed. With regard to Perrucci's possession of a driver's license, Moore testified that Perrucci was arrested for failure to display a driver's license, *see* Tex. Transp. Code Ann. § 521.025(a)(2), (c) (West Supp. 2010), that Perrucci never produced his driver's license to Moore, and that Moore did not find it. Perrucci testified that he had his driver's license on him but also admitted that he did not know where it was and that he had not

13

produced it through the time of his arrest.[2] Perrucci's failure to produce his driver's license, as noted in the trial court's findings, complicated Moore's routine tasks of identifying the driver and processing a computer check for warrants. Even with this complication, the elapsed time from stop to arrest was approximately eighteen minutes. We conclude that the testimony in this record does not raise a fact issue on unlawful detention and does not support Perrucci's requested instruction under article 38.23(a).

### 2. Coercive practices instruction

Perrucci also asserts that he was entitled to an article 38.23(a) instruction because of a disputed fact issue about whether the length of the detention was coercive in "causing" him to warn the officers about the drugs and needle in his car. Entitlement to this instruction requires an issue of disputed fact about whether an officer used inherently coercive practices to obtain a defendant's confession against his will. *Oursbourn*, 259 S.W.3d at 178. Such coercive practices render a confession involuntary "if the defendant's 'will has been overborne and his capacity for self-determination critically impaired.'" *Contreras v. State*, 312 S.W.3d 566, 574 (Tex. Crim. App. 2010), *cert. denied*, 2010 U.S. LEXIS 8169 (2010) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973)). Without evidence of police coercion or overreaching, any involuntariness of the confession is not attributable to illegal police conduct. *Oursbourn*, 259 S.W.3d at 181-82. The court of criminal appeals, citing the Supreme Court in *Colorado v. Connelly*, noted that statements have been found involuntary because of police overreaching when:

---

[2] Approximately forty-one minutes into the video recording—and after Perrucci's arrest—an officer is heard in the patrol car returning $100 and a driver's license to Perrucci that were found during a pre-towing inventory of Perrucci's car.

14

(1)  the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit;

(2)  the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep;

(3)  the police officers held a gun to the head of the wounded suspect to extract a confession;

(4)  the police interrogated the suspect intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food;

(5)  the suspect was held for four days with inadequate food and medical attention until he confessed;

(6)  the suspect was subjected to five days of repeated questioning during which police employed coercive tactics;

(7)  the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail; and

(8)  the suspect was questioned by relays of officers for thirty-six hours without an opportunity for sleep.

*Id.* at 170-71 (citing *Colorado v. Connelly*, 479 U.S. 157, 164 n.1 (1986) (collecting cases)).

Perrucci does not dispute the validity of Moore's initial stop. While conducting the investigation related to that stop, Moore discovered that Perrucci could not produce a driver's license, a new offense. Moore began the process of identifying the driver, looking up driver's license records, and checking for warrants. He consulted with his supervisor about whether to arrest Perrucci for failure to display his license. As Perrucci was being placed in the patrol car, he offered the information that a needle containing cocaine was on the passenger seat of his car because he did not want to expose the officers to his hepatitis C.

15

An article 38.23(a) instruction concerning the legality of a statement obtained from a defendant is inapplicable without some evidence of the type of police coercion or overreaching envisioned in *Connelly*. *Id*. at 178. Nothing remotely similar to those practices is presented in this record to demonstrate that Moore obtained a statement from Perrucci by coercion or overreaching—much less by actions overcoming Perrucci's will and critically impairing his capacity for self-determination. *See Contreras*, 312 S.W.3d at 574. We conclude that this record does not raise a fact issue on whether the alleged coercive length of Perrucci's detention "caused" him to warn the officers about the drugs and needle in his car and does not support his second requested instruction under article 38.23(a).

### 3. Involuntary statement instruction

Perrucci further contends that he was entitled to a general voluntariness instruction under article 38.22, section 6 of the code of criminal procedure, because there was evidence at trial from which a reasonable jury could conclude that his statement to Moore about the needle and the cocaine was not voluntary. Article 38.22, section 6 of the code of criminal procedure, in pertinent part, provides that:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. . . . Upon the finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.

Tex. Code Crim. Proc. Ann. art. 38.22 § 6. But as the State notes, the initial inquiry is whether article 38.22 is applicable to the statement. Section 5 of article 38.22 clarifies that article 38 does

16

not preclude admission "of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law." *Id*. art. 38.22 § 5.

Perrucci testified at the suppression hearing that his statement about the needle containing cocaine in his car was made voluntarily:

Q. [Defense counsel]: Why did you tell the officer that there were drugs in the front seat?

A. [Perrucci]: To be perfectly honest I have hepatitis and I didn't want him to get poked or anything.

. . . .

Q. [Prosecutor]: Mr. Perrucci, when you told that to the officer you were concerned about his safety going into the front seat of your car?

A. [Perrucci]: Yes, sir.

Q. [Prosecutor]: Did you just say that to the officer without him asking you?

A. [Perrucci]: I knew what the officer was after, whenever he came up to my car initially and asked to search it, they know what they're looking for, when we're—so, yeah, I volunteered that.

At trial, as at the suppression hearing, Perrucci testified that he told Moore about the needle and the cocaine—without any coercion, threat, or question prompting a response—because he did not want the officers to get stuck with a needle and exposed to his hepatitis C:

Q. [Prosecutor]: All right. He didn't ask you to search your car immediately before you told him there was a syringe on your seat, did he?

17

A. [Perrucci]:     No, sir.

Q. [Prosecutor]:   All right. So that statement you made was not in response to a question Josh Moore asked you right before you made the statement?

A. [Perrucci]:     No, sir.

Q. [Prosecutor]:   Okay. And you made that statement like you told your attorney because you were concerned that the officers would get stuck with the needle and you knew you had hepatitis?

A. [Perrucci]:     Yes, sir.

Q. [Prosecutor]:   Okay. And as you testified before on a prior occasion that statement you made was voluntary?

A. [Perrucci]:     Yes, sir.

Q. [Prosecutor]:   No one forced you to make that statement?

A. [Perrucci]:     No, sir.

Q. [Prosecutor]:   All right. No one coerced you or threatened you to make that statement?

A. [Perrucci]:     No, sir.

Q. [Prosecutor]:   You just made that statement as a voluntary statement so that the officers didn't get stuck with a needle?

A. [Perrucci]:     Yes, sir.

No error results from refusing to include a jury instruction about the voluntariness of a statement under article 38.22 when the evidence does not raise a "voluntariness" issue. *Oursbourn*, 259 S.W.3d at 174. Because the statute requires some evidence presented to the jury that the statement was not voluntary, Perrucci has not met his burden of demonstrating his entitlement to an instruction under article 38.22, section 6. The trial court did not err in refusing Perrucci's

18

requested instructions under article 38.23(a) and article 38.22, section 6.  Accordingly, Perrucci's fourth issue is overruled.

## CONCLUSION

We overruled all of Perrucci's issues except for his first issue, which we sustained. Accordingly, we modify the trial court's judgment by deleting the portion of the order that currently states:

Furthermore, the following special findings or orders apply:

**DEFENDANT TO PAY COURT COSTS AND ATTORNEYS FEES, IF ABLE, UPON RELEASE FROM INCARCERATION**.

As modified, we affirm the trial court's judgment.

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Modified and, as Modified, Affirmed

Filed:   August 31, 2011

Do Not Publish