Rogelio BUSTAMANTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–95–087–CR.

Court of Appeals of Texas,
Waco.

Feb. 28, 1996.

Steven P. Redgate, Sr., San Antonio, for appellant.

Dan V. Dent, District Attorney, Hillsboro, for appellee.

Before CUMMINGS and VANCE, JJ.

## OPINION

PER CURIAM.

Rogelio Bustamante appeals from his conviction for possession of more than five but less than fifty pounds of marihuana and the assessed punishment of ten years' imprisonment, probated for ten years, and a $3,500 fine. TEX.HEALTH & SAFETY CODE ANN. § 481.121 (Vernon Supp.1996). The convic-

tion and punishment followed a negotiated plea of no-contest. He raises one point of error, claiming that the court erred by denying a pre-trial motion to suppress marihuana seized in a warrantless roadside search of his car.[1] Because we conclude that the trial court could have found that the search was supported by probable cause, we will affirm.

While travelling north on IH 35E, Bustamante and his passenger, Jose Castro, were stopped by Texas Department of Public Safety Troopers William Thomas and Ben Macias for failing to signal lane changes. Bustamante and Castro gave conflicting accounts of where they had been, Bustamante stating that they were coming from San Antonio and Castro claiming that their departure point was Houston. Bustamante was "pretty nervous" at first and became more nervous during the encounter. His documentation showed two different addresses—Spring, Texas, on his driver's license; Houston on his proof-of-insurance papers. He told Thomas that the address on his drivers's license was incorrect. Thomas asked Bustamante to tell him where he was before San Antonio, but Bustamante was either unable to understand the question or unwilling to answer it.

Because of the inconsistencies and nervousness, Thomas requested and was given permission to search the car's trunk, but did not find anything suspicious during his search. After Thomas issued Bustamante a warning for the traffic offenses, Macias pointed out "a screw in the passenger side door, down in the bottom right-hand corner that was just stuck in where there is a little carpet strip down at the bottom."

Apparently, the location of this screw was odd enough to pique Thomas' and Macias' curiosity. The two officers knew from their experience and intelligence reports that a car door is a place commonly used to conceal contraband. They turned the car's ignition over to engage the battery and worked the window controls from the driver's side door. The electric window on the passenger's side would go down three or four inches and no further, but would return to the fully closed

---

1. We note that this appeal is properly perfected and that it is limited to the denial of his written pre-trial motion. TEX.R.APP.P. 40(b)(1); *Davis v. State,* 870 S.W.2d 43, 46–47 (Tex.Crim.App. 1994).

position. Apparently, though, Bustamante had told them before they became interested in the window's operation that it had been damaged in an accident. By feeling the door panel, Thomas discovered that it was approximately an inch away from the door frame. He could feel "some plastic" when he put his fingers into the gap between the frame and the panel but could not see any plastic when he looked inside the door from the top. At Bustamante's insistence, Thomas examined the driver's door to compare it to the passenger door. Finding that the driver's door did not have the same odd characteristics, Thomas lay on the ground and looked up inside the passenger's door. With the aid of a flashlight, Thomas could see a "brown bundle" inside the door. Thomas believed that he was seeing contraband concealed in the door.

Over Bustamante's objections, Thomas obtained a screw driver from the car's trunk, removed the screw, and, by pulling the panel away from the frame, discovered nine tape-wrapped bundles. Bustamante and Castro were then arrested. During another search, this time aided by dogs, Thomas discovered seven more similar packages.

Bustamante argued in the hearing on his motion to suppress that the officers exceeded the bounds of the detention when they continued to search after issuing the warnings. On appeal, he continues this argument, asserting that "[t]he sole issue to be determined by this Court on appeal is the validity of the warrantless search of Appellant's car after issuing a 'warning' and releasing Appellant."

■ When reviewing a ruling on a motion to suppress, we do not engage in a factual determination ourselves; rather, we determine if the court's implied findings are supported by the record. *Banda v. State*, 890 S.W.2d 42, 51–52 (Tex.Crim.App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). If those findings are supported by the record, we consider only if the court incorrectly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

■ Initially, the court must have determined that the continued detention, *i.e.*, the "seizure," was legal. "To justify a temporary detention, the officer must have specific articulable facts which, in light of his experience and general knowledge taken, together with rational inferences from those facts, would reasonably warrant the intrusion on the citizen." *Gurrola v. State*, 877 S.W.2d 300, 302 (Tex.Crim.App.1994). The officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts which would justify a continued investigatory detention. *Razo v. State*, 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979).

■ Here, Thomas testified that (1) Bustamante was "pretty nervous" and became more nervous as the stop continued; (2) Bustamante and Castro gave conflicting statements concerning the origin of their journey; (3) Bustamante's address on his license was incorrect, (4) Bustamante could not tell Thomas where he had been before San Antonio; (5) the officers noticed an out-of-place screw on the passenger side door; and (6) Thomas knew from his experience and intelligence information that contraband was often concealed in the doors of automobiles. Given these articulated facts, the court was justified in concluding that the officers' continued detention of Bustamante to investigate the out-of-place screw was lawful. *Gurrola*, 877 S.W.2d at 302; *Romero*, 800 S.W.2d at 543.

■ Next, the court must have found that the officers' actions in pursuing their interests in the odd screw were justified in the absence of a warrant. Because a car is mobile, it may be lawfully searched without a warrant if the search is supported by probable cause to believe that the vehicle contains contraband or the instrumentalities of a crime. *Chambers v. Maroney*, 399 U.S. 42, 47–52, 90 S.Ct. 1975, 1979–81, 26 L.Ed.2d 419 (1970); *Delgado v. State*, 718 S.W.2d 718, 722 (Tex.Crim.App.1986). An officer possesses sufficient probable cause when "reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or

evidence of a crime will be found." *McNairy v. State,* 835 S.W.2d 101, 106 (Tex.Crim.App. 1991). Whether the officer possessed probable cause to pursue a course of action is determined by the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *Amos v. State,* 819 S.W.2d 156, 161 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 917, 112 S.Ct. 1959, 118 L.Ed.2d 561 (1992). As a general rule, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983).

■ The search began when the officers started testing the electric window. *McCall v. State,* 540 S.W.2d 717, 720 (Tex.Crim.App. 1976) ("A search means, of necessity, a quest for, a looking for, or a seeking out of that which offends against the law. This implies a prying into hidden places for that which is concealed."). By operating the window, the officers were prying into a hidden place trying to determine if something was concealed in the door. At this point, the officers knew that Bustamante was nervous, getting more nervous, disagreed with his passenger as to their point of departure, listed an incorrect address on his license, could or would not state where he had been before San Antonio, and had an odd screw in his door panel. It is common knowledge that smugglers use secret compartments to conceal contraband. *Cardenas v. State,* 857 S.W.2d 707, 716 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). These officers knew from their training and intelligence reports that drug couriers often concealed their goods in the doors of their automobiles.

We believe that this is a close question. Our duty, as the reviewing court, is to "determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action." *Angulo v. State,* 727 S.W.2d 276, 278 (Tex.Crim.App. 1987); *Carr v. State,* 904 S.W.2d 882, 885 (Tex.App.—Eastland 1995, pet. ref'd). The trial court must have found that the officers possessed probable cause sufficient to allow them to determine if the window operated

properly. We cannot say that the court did not have a substantial basis, for this finding or that the ruling arose from an incorrect application of the law to the established facts. *Id.; Banda,* 890 S.W.2d at 51–52; *Romero,* 800 S.W.2d at 543.

■ After discovering that the window was partially operational, seemingly contrary to Bustamante's statement, the officers continued their investigation. We believe that the court was justified in concluding that the additional information gained by manipulating the window was sufficient to establish probable cause to support the officers' continued investigation. *Id.* Each inquiry by the officers supported their next, and, ultimately, the discovery of the packages in the door frame.

We overrule Bustamante's sole point of error and affirm the judgment.