ACCEPTED
13-14-00374-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/4/2015 3:45:09 PM
DORIAN RAMIREZ
CLERK

**FILED**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**06/04/15**

**CECILE FOY GSANGER, CLERK**
**BY** CCoronado

No. 13-14-00374-CR

IN THE
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
********************

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/4/2015 3:45:09 PM
CECILE FOY GSANGER
Clerk

**RICHARD JAMAL NETHERLY,** Appellant

**V**.

**THE STATE OF TEXAS,** Appellee

********************

Appealed From The 128TH Judicial District Court
Of Orange County, Texas
CAUSE NO.: A-130220-R
********************

**STATE'S FIRST AMENDED BRIEF**
********************

John D. Kimbrough
District Attorney
Orange County Courthouse
801 Division, Room 106
Orange, Texas 77630
Telephone:    (409) 883-6764
Fax:    (409) 883-9322
State Bar No. 11425300

Phillip C. Smith, Jr.
Assistant District Attorney
Orange County Courthouse
801 Division, Room 106
Orange, Texas 77630
Telephone:    (409) 883-6764
Fax:    (409) 883-9322
State Bar No. 00797460

ORAL ARGUMENT WAIVED

# TABLE OF CONTENTS

This Table of Contents.................................................................................... ii

Identity of Parties and Counsel ..................................................................... iii

List of Authorities ..........................................................................................iv

Statement of the Case.....................................................................................1

Appellant's Points of Error Restated .............................................................2

State's Response .............................................................................................2

Statement of Facts..........................................................................................2

Summary of the Argument.............................................................................5

Standard of Review........................................................................................6

Argument and Authorities..............................................................................7

Conclusion ...................................................................................................16

Prayer ...........................................................................................................17

Certificate of Compliance ............................................................................17

Certificate of Service ...................................................................................17

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rules 38.1 and 38.2, of the Texas Rules of Appellate Procedure, the following is a list of all parties to the trial court's judgment from which appeal is taken and the names and addresses of all trial and appellate counsel.

**PARTIES:**

1.     Richard Jamal Netherly, Appellant

2.     The State of Texas, Appellee

**COUNSEL:**

1.     Kent Schaffer, Counsel for Appellant at Trial
       712 Main Street
       Houston, Texas 77002

2.     Daphne Pattison Silverman, Counsel for Appellant on Appeal
       501 North IH 35
       Austin, Texas 78702

3.     Phillip C. Smith, Jr., Counsel for the State of Texas
       at Trial and on Appeal
       Assistant District Attorney
       Orange County Courthouse,
       801 Division
       Orange, Texas 77630

# LIST OF AUTHORITIES

## CASES

*Carmouche v. State*, 10 S.W.3d 323 Tex.Crim.App.2000 .............................6

*Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997)..................................6

*State v. Ballard*, 987 S.W.2d 889 (Tex.Crim.App.1999) ...............................6

*State v. Munoz*, 991 S.W.2d 818 (Tex.Crim.App.1999) .................................6

*LeBlanc v. State*, 138 S.W.3d 603 (Tex.App.-Houston [14 Dist.] 2004)........7

*Villareal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996).......................7

*State v. Daly*, 35 S.W.3d 237, 241 (Tex.App.-Austin 2000, no pet.)..............7

*Berkemer v. McCarty*, 468 U.S. 420, 439,
 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) ......................................7

*Powell v. State*, 5 S.W.3d 369 (Tex.App.-Texarkana 1999, pet. ref'd) ..7,8,13

*Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)..........8,9,15

*Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347
(1996)..........................................................................................................8

*Razo v. State*, 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979)........8

*Bustamante v. State*, 917 S.W.2d 144, 146 (Tex.App.-Waco 1996, no pet.)..8

*Davis v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App.1997)........................8,9

*Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992).........................9

*Whren v. U.S.*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89
(1996).........................................................................................................9

*Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App.2000) ........................9,10

*United States v. Sharpe*, 470 U.S. 675, 685-6 (1985) ...................................14

*Balentine v. State*, 71 S.W.3d 763, 770-71 (Tex.Crim.App.2002) ...............14

*Williams v. State*, 621 S.W.2d 609, 613 (Tex.Crim.App.1981)....................15

*Reid v. Georgia*, 448 U.S. 438 (1980)..........................................................15

*United States v. Price*, (2nd Cir. 1979) 599 F.2d 494...................................15

*United States v. Santana*, (2nd Cir. 1973) 485 F.2d 365. ..............................15

## STATUTES

TEX.TRANS.CODE ANN. § 544.010, (Vernon 1999).....................................9

TEX.TRANS.CODE ANN. § 547.322(f), (Vernon 1999)..................................9

No. 13-14-00374-CR

IN THE
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
*********************
**RICHARD JAMAL NETHERLY,** Appellant

**V**.

**THE STATE OF TEXAS,** Appellee
*********************
**STATE'S BRIEF**
*********************

TO THE HONORABLE JUDGES OF SAID COURT:

## Statement of the Case

The Appellant, Richard Jamal Netherly, was charged in Cause number A-130220-R with Felony Possession of a controlled substance. On or about October 25, 2013, Counsel for Appellant filed a motion to suppress the evidence and/or statements obtained from Mr. Netherly during the traffic stop. On January 16, 2014, a hearing was held on Appellant's motion. The court requested that each side submit briefs in support of their position at the conclusion of that hearing. After the briefs were submitted, the motion to suppress was denied by the Court. Clerk's Record (hereinafter CR) p. 5, 23-6, 59, 73-100, 102.

Following this ruling, a plea was set for April 24, 2014. The defendant entered a plea of guilty to the allegations of the Indictment. CR p. 5, 112-16. The

case was reset for sentencing to allow Appellant to get his affairs in order. On May 30, 2014, the Court sentenced Appellant according to the plea agreement, and Appellant was sentenced to twenty (20) years in the Texas Department of Corrections, Institutional Division, and ordered to pay a fine of $1,000.00. CR p. 5, 119-121.

Appellant filed notice of appeal on June 2, 2014, and now appeals the Court's denial of Appellant's motion to suppress the evidence and statements obtained during the traffic stop, asserting one alleged points of error. CR p. 5, 122-26.

## APPELLANT'S POINT OF ERROR

**The Trial Court erred by denying Appellant's motion to suppress because there was no reasonable suspicion or probable cause for Appellant's traffic stop, nor was there reasonable suspicion to detain Appellant for more than 35 minutes after the initial purpose of the stop had been fulfilled.**

## STATE'S RESPONSE

## Statement of Facts

On November 26, 2011, Defendant operated his vehicle in Orange County, Texas. At approximately 9:43 pm, he traveled past officer Rob Strause of the Pinehurst Police Department. He was travelling on Martin Street, within the city of Pinehurst. As the defendant passed, officer Strause noticed that the license plate

was not properly illuminated, and the officer pulled in behind the defendant and began to follow him. As the defendant came to the stop sign at Martin and West Park, he failed to come to a complete stop before turning right onto West Park as required by law. As officer Strause caught up to him on West Park, the officer briefly turned his lights off to demonstrate on camera that the license plate lights did not make the license plate clearly legible as required by law. Officer Strause then activated his emergency lights and stopped the defendant on West Park.

As the officer approached the defendant's vehicle, he noticed that it was the defendant, who he knew on sight and with whom he had numerous dealings. One of those dealings included an investigation for the sale of cocaine that Officer Strause had conducted as the constable for precinct 2, previous to working for Pinehurst Police Department.

When he greeted the defendant from the passenger side of the defendant's vehicle, the defendant gathered his driver's license and insurance information, and Officer Strause asked the defendant to step to the rear of the vehicle. After the defendant stepped out of the driver's side door, Officer Strause observed the defendant reach back into the vehicle. When the officer looked and shined his light in through the passenger window, he observed the defendant's hand near a blue fanny pack that had previously not been visible. As the defendant saw the officer

3

looking in through the window, he moved his hand quickly from the fanny pack to the cell phone on the center seat. The defendant picked up the phone and pushed some buttons, and then immediately put the phone back down on the seat. The defendant then stepped to the rear of the vehicle.

When Officer Strause met the defendant at the rear of the vehicle, he asked what the defendant had been doing and what had he moved around when he reached back into the vehicle. The defendant responded that he needed to get his cell phone. The officer told him to leave it, and informed him of the reason for the traffic stop.

The officer wrote the defendant a warning for the license plate light, as he waited for the return from the dispatcher for the defendant's driver license. As the officer filled out the written warning, he asked for information, including phone numbers and where the defendant worked. The defendant didn't give the work number when asked, he instead gave another number. The defendant also did not know the address of where he worked. The defendant appeared to be overly nervous, even after being informed that he was only being issued a written warning.

The officer asked for consent to search the vehicle, which the defendant refused. The officer had already asked dispatch to send a canine unit to his location to conduct a free air sniff around the vehicle. The defendant was free to leave from the time the warning was issued, but the vehicle had to remain where it was until the

4

canine unit arrived. When the canine arrived, he alerted to the driver's side of the vehicle, and when the officer searched the vehicle he found the cocaine in the fanny pack that he had seen the defendant move on the seat in the truck as he reached back into the vehicle previously. The defendant was then arrested for possession of a controlled substance.

That search concluded with the discovery of approximately three hundred grams of cocaine being found in the vehicle.

## Summary of the Argument

Though the warning citation was signed before the search took place, the facts and totality of the circumstances of the entire stop were an "investigation into criminal activity," which Officer Strause, who is a certified peace officer in the state of Texas, had a right to investigate. The nervous actions of Appellant, reaching into the vehicle and moving the fanny pack, then a cell phone when the officer looked into the vehicle, inability to give work phone numbers or an address, and overall demeanor of Appellant throughout the entire stop were relied upon by Officer Strause to develop articulable facts that justified a continued investigatory detention of Appellant. Appellant was not detained for an unreasonably long period of time, certainly no longer than was necessary to effectuate the purpose of the stop, and

5

more than three hundred grams of a controlled substance were found in his fanny pack in his truck. Officers are entitled to rely on all of the information obtained during the course of their contact with a suspect in developing articulable facts that would justify a continued investigatory detention.

## Standard of Review

The appropriate standard for reviewing a trial court's ruling on a motion to suppress evidence is a bifurcated standard of review, giving "almost total deference to a trial court's determination of historical facts" and reviewing de novo the court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323 (Tex.Crim.App.2000). *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997). In this case, as in *Carmouche*, the trial court did not make explicit findings of historical fact. Therefore, this court should review the evidence in a light most favorable to the trial court's ruling. See *State v. Ballard*, 987 S.W.2d 889 (Tex.Crim.App.1999); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999). In other words, this court should assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion, and review de novo the lower court's application of the relevant Fourth Amendment standards. *Guzman*, 955 S.W.2d at 89. Accordingly, this court should view the evidence and all

reasonable inferences therefrom in the light most favorable to the trial court's ruling, and sustain the ruling if it is sufficiently supported by the evidence and is correct on any theory of law applicable to the case. *LeBlanc v. State*, 138 S.W.3d 603, 606 (Tex.App.-Houston [14 Dist.] 2004) citing *Villareal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996).

## Arguments and Authorities

A traffic stop is a Fourth Amendment seizure resembling an investigative detention. See *State v. Daly*, 35 S.W.3d 237, 241 (Tex.App.-Austin 2000, no pet.) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984)). An investigative detention is a seizure. *Powell v. State*, 5 S.W.3d 369, 375 (Tex.App.-Texarkana 1999, pet. ref'd). Therefore, a traffic stop must be reasonable under the United States and Texas Constitutions. See U.S. Const. Amend. IV; Tex. Const. Art. I, § 9.

Appellant Netherly contends that his detention, the search, and the eventual seizure of the three hundred grams of a controlled substance were unreasonable under both the Fourth Amendment and Article I, Section 9 of the Texas Constitution. To determine whether an investigative detention is reasonable under the Fourth Amendment, the court should make two inquiries: 1) Whether the officer's action was justified at its inception; and 2) Whether it was reasonably

related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonableness is measured in objective terms by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996). In applying this test, the Supreme Court has consistently eschewed bright-line rules, and has instead emphasized the fact-specific nature of the reasonableness inquiry. *Id*.

If during the course of a valid investigative detention, the officer develops a reasonable suspicion that the detainee is engaged in or soon will engage in criminal activity, a continued detention is justified. *Powell v. State*, 5 S.W.3d at 377. After the initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention. *Id*. (citing *Razo v. State*, 577 S.W.2d 709, 711 (Tex.Crim.App. [Panel Op.] 1979); *Bustamante v. State*, 917 S.W.2d 144, 146 (Tex.App.-Waco 1996, no pet.)). Where the initial detention is based on a traffic violation, various combinations of factors will support a reasonable suspicion of criminal activity, sufficient to justify a continued detention or further questioning unrelated to the traffic violation. *Id*.

The State need only show reasonable suspicion to support a detention. *Davis*

*v. State*, 947 S.W.2d 240, 242 (Tex.Crim.App.1997) (adopting the standard established by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Here, the initial stop was justified at its inception. Appellant contends that there was no probable cause to stop Appellant. He was stopped for failing to come to a complete stop at a stop sign, and for defective equipment, in that his license plate was not illuminated to a degree that it could be read from a distance of fifty feet, both violations of Texas traffic law. See TEX.TRANS.CODE ANN. § 544.010, and § 547.322(f), (Vernon 1999).

Appellant contends that he did not violate these laws, because there was some light visible on the license plate, and that the officer did not see Appellant fail to stop at the stop sign. Officer Strause was justified in stopping Appellant. According to the officer, his attention was drawn to Appellant's vehicle because of the lack of proper light on the license plate, but he witnesses Appellant fail to stop at the stop sign at Martin and West Park. In Texas, a police officer may lawfully stop and detain a person for a traffic violation. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992). Failure to stop at the stop sign gave Officer Strause probable cause to detain Appellant. If probable cause exists for the officer to believe a traffic violation has transpired, the stop is reasonable. *Whren v. U.S.*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Walter v. State*, 28

S.W.3d 538, 542 (Tex.Crim.App.2000).

Officer Strause testified repeatedly under direct and cross examination that though there was some light visible on the license plate of Appellant's vehicle, it was insufficient to comply with the law, and that the license plate was not legible at a distance of fifty feet. See RR Vol. 2, pp. 8-9, 54-55, 56, 57, 58. The officer also testified that Appellant did not come to a complete stop at the stop sign, but continued through it and turned right onto West Park. *Id*. at 9. Appellant now claims that he couldn't have seen that because it took him too long to turn around. Those arguments were made to the trial court, and were resolved in favor of the officer. The trial court was in the best position to judge the credibility of the witnesses and the weight to be given their testimony. The court chose to believe that there was a valid reason to stop Appellant, based on the testimony presented at the hearing on the motion to suppress.

It is long established that failure to come to a complete stop at a marked stop sign is a valid reason for an officer to detain an individual. Officer Strause testified that Appellant did not come to a complete stop at the stop sign at the corner of Martin and West Park. There is nothing in the record to refute that fact, and Appellant did not testify that he did come to a complete stop. That reason alone, was valid probable cause to detain Appellant. The stop was justified.

Appellant also contends that any actions after the warning citation was signed were unwarranted and unjustified. Appellant contends that once the officer has made the decision to issue a warning citation, any delay that occurs due to the action or inaction of the officer results in an illegal detention. Appellant states that since this was signed prior to the request for permission to search and the subsequent detention, which was unrelated to the stop or the detention, that the detention had concluded, and the continued detention and seizure were unsupported.

After the initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts that would justify a continued investigatory detention. Where the initial detention is based on a traffic violation, various combinations of factors will support a reasonable suspicion of criminal activity, sufficient to justify a continued detention or further questioning unrelated to the traffic violation.

With reference to the second inquiry under Terry, this court should review the record to determine whether there is sufficient evidence in the record to support Appellants continued detention. At the motion to suppress hearing, Officer Strause testified that the Appellant reached back into the vehicle after the officer asked him to step to the rear of the vehicle. When Appellant reached back into the vehicle, Officer Strause shined his light into the vehicle and saw Appellant's hand on a fanny

pack that had not been visible prior. After Appellant saw Officer Strause looking through the window, he moved his hand from the fanny pack and picked up his phone and pushed a couple of buttons, then laid the phone down on the seat. *Id*. at p. 10-12. Appellant was very talkative with Office Strause, and appeared to get more nervous as the stop went on. *Id*. at p. 19. Appellant did not act like he normally acted around Officer Strause. *Id*. at p. 65. Officer Strause had dealt with Appellant before, and had arrested him for possession of a controlled substance before, and knew how Appellant normally acted. Officer Strause noted that Appellant did not act normal, and appeared to be nervous during this stop. *Id*. at p. 66-7, 73. Appellant got more nervous as the interaction continued. *Id*.

Appellant's story about why he reached back into the vehicle seemed implausible, in that he had inadvertently dialed a number before getting out of the vehicle, but was seen touching a fanny pack, and did not even reach for the phone until he noticed the officer had returned and was looking in the passenger window at him. Further, Appellant seemed to be nervous and talkative, which was not how he normally acted around officers. Finally, the fanny pack itself became relevant when Officer Strause testified that he knows Appellant to traffic cocaine in a fanny pack. *Id*. at 11.

Appellant's nervousness was apparent to Officer Strause and appeared to

escalate while they waited on a canine to conduct a free air sniff. Appellant acted completely different than he had on other occasions with Officer Strause, and this alerted the officer that something was not right. Further, Officer Strause's suspicions were further heightened by the fact that Appellant had lied about what he was reaching into the truck for, and the implausibility of his phone story showed that he was lying. *Id*. at p. 19.

The story that Appellant told seemed implausible, and appeared to be made up. He was acting differently and being much more talkative than he had ever been around officer Strause. He could not give a work number or address when asked, and gave a number that Officer Strause knew was not the work telephone number. *Id*. at pp. 17,19, 65, 66, 70, 73. It appeared to Officer Strause from the beginning of their contact together that Appellant was "up to something" and "there was some type of criminal act occurring." RR p.14.

The combination of these circumstances support a reasonable suspicion of criminal activity that justified a continued detention and further questioning unrelated to the traffic violation. See *Powell*, 5 S.W.3d at 377. These factors also warranted the free-air sniff of the canine that was already at the scene with Officer Strause. When the drug dog conducted the free-air sniff around the automobile, he alerted to the portion of the car where the drugs were found. The entire stop,

including the search did not take more than forty-seven minutes, and was not so unreasonable as to violate any of Appellant's constitutional rights.

Although the length of the detention may render a Terry stop unreasonable, there is no rigid bright-line time limitation. *United States v. Sharpe*, 470 U.S. 675, 685-6 (1985). Instead, common sense and ordinary human experience must govern over rigid criteria. *Id*. at 685. The reasonableness of the detention depends on whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly, during which time it was necessary to detain the defendant. *Id*.; *Balentine v. State*, 71 S.W.3d 763, 770-71 (Tex.Crim.App.2002).

In the case at bar, Officer Strause, called for a canine before he asked for consent to search, and waited until the canine arrived. Approximately 20-25 minutes later, when that assistance arrived, the canine officer conducted the free-air sniff with the canine. Within a couple of minutes, the search turned up the controlled substance, which is the subject of this suppression hearing appeal. The canine arrived 35 minutes and 38 seconds after the officer first encountered Appellant. *Id*. at 68. That is not an extraordinarily long detention, and Appellant was not detained for longer than was necessary to conduct the search. Further, Appellant was free to leave at any time after the issuance of the warning, but the

vehicle was detained until the canine searched the air around it. *Id*. at 75-6.

Looking at the totality of the circumstances, Officer Strause's contact with Appellant from the beginning of the stop began to raise suspicions in his mind. These suspicions amounted to more than a hunch that some activity out of the ordinary was occurring, or had occurred, or was about to occur. They were based on his experience, training, and work in this area of the state. They were based on his dealings with this Appellant, and the fact that Appellant acted differently on November 26, 2011 than he had on previous encounters with Officer Strause. Though no single element that he considered might alone support the intrusion of appellant's Fourth Amendment rights, Officer Strause's observation of the scenario taken as a whole, and viewed through the eyes of a reasonable police officer on the scene, satisfy the requirement for an investigatory stop.

As shown in *Terry v. Ohio*, supra, circumstances arise frequently in day-to-day police work where wholly lawful conduct might justify the suspicion that criminal activity is afoot. *Williams v. State*, 621 S.W.2d 609, 613 (Tex.Crim.App.1981). See also *Reid v. Georgia*, 448 U.S. 438 (1980); *United States v. Price* (2nd Cir. 1979) 599 F.2d 494; *United States v. Santana* (2nd Cir. 1973) 485 F.2d 365.

Because the detention was based on reasonable suspicion, the detention was

reasonable and did not violate the Fourth Amendment, nor Article I, Section 9 of the Texas Constitution.   Appellant's claims are without merit.   Therefore, the judgment of the trial court should be affirmed.

## **CONCLUSION**

Giving "almost total deference to a trial court's determination of historical facts" and reviewing de novo the court's application of the law of search and seizure, the decision of the trial court should stand on denying the motion to suppress the evidence.   In this case since the trial court did not make explicit findings of historical fact, this court should review the evidence in a light most favorable to the trial court's ruling.   Doing so clearly shows that there is more than enough reason in the record to show that Officer Strause was conducting an investigation that was supported by common sense, and the clues that Appellant was giving him during their entire contact together.   A peace officer is and should be entitled to investigate crimes that have or in their opinion are about to occur.   The evidence in this case supports the brief detention for investigation purposes and Appellant's rights were not unduly burdened.

His points of error are without merit.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, and since no reversible error is shown, the State respectfully prays that this Court affirm the conviction.

Respectfully submitted,
JOHN D. KIMBROUGH
DISTRICT ATTORNEY


/s/ Phillip C. Smith, Jr.
PHILLIP C. SMITH, JR.
ASST. DISTRICT ATTORNEY
ORANGE COUNTY
DISTRICT ATTORNEY'S OFFICE
ORANGE CNTY COURTHOUSE
ORANGE, TEXAS 77630
(409) 883-6764
STATE BAR NO. 00797460

## CERTIFICATE OF COMPLIANCE

I, Phillip C. Smith, Jr., attorney for the State, certify that this document was generated by a computer using Microsoft Word 2010, which indicates that the word count of this document is 4365 excluding portions omitted from that count per Tex. R.App. P. 9.4 (i).

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the State's Brief has been forwarded to Daphne Pattison Silverman, Counsel for Appellant, RICHARD JAMAL NETHERLY, via email at daphnesilverman@gmail.com, and Efile service, on the 5th day of June, 2015.

/s/ Phillip C. Smith, Jr.
PHILLIP C. SMITH, JR.
ASST DISTRICT ATTORNEY